UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CITY OF PROVIDENCE and<br>CITY OF CENTRAL FALLS,<br><br>                      Plaintiffs,<br><br>   v.<br><br>WILLIAM P. BARR, in his Official capacity as Attorney General of the United States, and the UNITED STATES DEPARTMENT OF JUSTICE,<br><br>                      Defendants. | Civil Action No.<br>18-CV-437-JJM-LDA |

**DEFENDANTS' REPLY IN FURTHER SUPPORT
OF THEIR MOTION TO DISMISS,
<u>OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    The Challenged Conditions are Modest and Encourage Reasonable Cooperation Between Law Enforcement Agencies ....................................................2

    II.    The Challenged Byrne JAG Conditions are Valid. ....................................................4

        A.    The Plaintiffs fail to explain what "placing special conditions" and "determining priority purposes" mean in Section 10102(a)(6) ........................4

        B.    The Section 1373 Certification Condition is statutorily authorized and applies broadly to all federal laws applicable to the Plaintiffs, not merely those related to grants .........................................................................................7

        C.    Section 1373 does not violate the Tenth Amendment ........................................8

        D.    The Section 1373 Condition does not nationalize local police forces or violate 34 U.S.C. § 10228(a) ...............................................................................12

CONCLUSION ..............................................................................................................................13

## TABLE OF AUTHORITIES

**CASES**

*Adams v. Dole*,
　927 F.2d 771 (4th Cir. 1991).................................................................................................6

*American Sur. Co. of N.Y. v. Marotta*,
　287 U.S. 513 (1933).................................................................................................................6

*Arizona v. United States*,
　567 U.S. 387 (2012)...............................................................................................................10

*City of Philadelphia v. Attorney Gen. of the United States*,
　916 F.3d 276 (3d. Cir. Feb. 15, 2019)....................................................................................1

*Ely v. Velde*,
　451 F.2d 1130 (4th Cir. 1971) .............................................................................................13

*Herrera-Inirio v. INS*,
　208 F.3d 299 (1st Cir. 2000) ................................................................................................10

*Hodel v. Va. Surface Mining & Reclamation Assoc., Inc.*,
　452 U.S. 264 (1981)...............................................................................................................11

*Murphy v. National Collegiate Athletic Ass'n*,
　138 S. Ct. 1461 (2018) ............................................................................................................9

*New York v. United States*,
　505 U.S. 144 (1992)...........................................................................................................9, 12

*Norfolk & W. Ry. v. American Train Dispatchers Ass'n*,
　499 U.S. 117 (1991)..................................................................................................................8

*Printz v. United States*,
　521 U.S. 898 (1997)................................................................................................... 9, 11, 12

*Reno v. Condon*,
　528 U.S. 141 (2000)...............................................................................................................12

*Williams v. Taylor*,
　529 U.S. 362 (2000)..................................................................................................................5

## **STATUTES**

8 U.S.C. § 1226(a) .................................................................................................................9

8 U.S.C. § 1226(c) .................................................................................................................9

8 U.S.C. § 1231(a)(1)(A), (B)(iii) ..........................................................................................9

8 U.S.C. § 1231(a)(2) .............................................................................................................9

8 U.S.C. § 1231(a)(4)(A) .......................................................................................................9

8 U.S.C. § 1373 ..............................................................................................................*passim*

8 U.S.C. § 1373(a) ..............................................................................................................8-9

8 U.S.C. § 1373(b) ..............................................................................................................8-9

28 U.S.C. § 510 ......................................................................................................................5

34 U.S.C. § 10102(a)(6) ................................................................................................. 1, 4, 6

34 U.S.C. § 10152(a)(1) .........................................................................................................4

34 U.S.C. § 10153(A)(1) ........................................................................................................2

34 U.S.C. § 10153(A)(4) ........................................................................................................4

34 U.S.C. § 10153(A)(5)(C) ...................................................................................................4

34 U.S.C. § 10153(A)(5)(D) ................................................................................................7, 8

34 U.S.C. § 10202(c)(1)(B), (C) .............................................................................................7

34 U.S.C. § 10228(a) ............................................................................................................12

34 U.S.C. § 10251(a)(1) ......................................................................................................3-4

42 U.S.C. § 5779(a) .........................................................................................................12-13

42 U.S.C. § 16154(g)(1) .........................................................................................................8

Pub. L. No. 89-554 .................................................................................................................5

Pub. L. No. 113-121 ...............................................................................................................8

## **LEGISLATIVE DOCUMENTS**

H.R. Rep. No. 104-725 (1996) (Conf. Rep.) ........................................................................10

**INTRODUCTION**

In Plaintiffs' reply brief, the Cities of Providence and Central Falls continue to claim entitlement to federal law-enforcement grants while simultaneously ignoring the statutorily-authorized conditions that accompany those grants, thus frustrating the operations of federal law enforcement. Specifically, the Plaintiffs continue to claim that they can unilaterally refuse to share information with the federal government about criminal aliens in their custody, while at the same time, the federal government must ignore their behavior in its funding decisions.  Plaintiffs' desire to have it both ways should be rejected by this Court.

Plaintiffs' constitutional challenges to the § 1373 certification condition are without merit, because the Spending Clause plainly authorized Congress to condition the expenditure of federal funds in this manner, and Congress in turn enacted a provision authorizing the Assistant Attorney General (AAG) to "plac[e] special conditions on all grants, and determin[e] priority purposes for formula grants." 34 U.S.C. § 10102(a)(6).  While the Plaintiffs' seek to read this delegation out of the Byrne JAG statute, they fail to identify any purpose for this statutory language apart from the authority that they now challenge, nor do they explain why Congress would have amended the statute to add language that, under Plaintiffs' interpretation, would be meaningless surplusage.[1] Plaintiffs' Tenth Amendment objections to other applications of § 1373 are similarly beside the point, and in any event, they ignore that § 1373, as applied to information about incarcerated aliens, does not commandeer the states but rather preempts state policies that regulate aliens in a manner

---

[1] At various points in Plaintiffs' closing brief, they reference non-binding decisions of district courts outside of the First Circuit adverse to the Defendants regarding the challenged Byrne JAG conditions.  The Defendants are currently appealing these adverse decisions.  Plaintiffs also cite the recent decision of *City of Philadelphia v. Attorney Gen. of the United States*, 916 F.3d 276, 279 (3d. Cir. Feb. 15, 2019).  But in that decision, the Third Circuit did not explain what work the "special conditions" and "priority purposes" language performs in the statute.  *See id.* at 287-88.

fundamentally inconsistent with the federal immigration scheme.  Accordingly, for the reasons that follow, and those set forth in their opening brief, Defendants' motion to dismiss Counts I through V, or alternatively, for partial summary judgment on those counts, should be granted.

## ARGUMENT

### I. The Challenged Conditions are Modest and Encourage Reasonable Cooperation Between Law Enforcement Agencies.

Contrary to Plaintiffs' argument in their recent brief, the challenged conditions are not an "attack on federalism and the separation of powers in the name of nationalism and anti-immigrant sentiment."  Plaintiffs' Reply Memorandum in Further Support of Plaintiffs' Motion for Partial Summary Judgment (FY 2017 Byrne JAG Program) (ECF No. 26-1) ("Pls.' Closing Br."), at 2.  It must always be remembered that these conditions are part of a *voluntary* grant program.  The grant program is *not* mandatory.  No one forces applicants to apply for Byrne JAG grants.  If the Plaintiffs are unhappy with the strings attached to federal law enforcement grants, they are free to forgo the money.[2]

In reality, objective analysis shows that the "notice" and "access" conditions are extraordinarily modest requirements that fall well within the Department's statutory authority. The notice condition requires that the grantee have a policy of notifying DHS of the scheduled release date of an alien in criminal custody, after receiving a formal request for notification from DHS. The access condition requires that the grantee have a policy of allowing federal agents to meet with incarcerated aliens in order to inquire about the aliens' rights to remain in the United States.

---

[2] It does not follow that if an applicant foregoes Byrne JAG funding, then important programs will cease to operate.  This is so because Byrne JAG funds can only supplement existing programs that states are already funding.  *See* 34 U.S.C. § 10153(a)(1) (requiring "certification that Federal funds made available under this part will not be used to supplant State or local funds, but will be used to increase the amounts of such funds that would, in the absence of Federal funds, be made available for law enforcement activities").  Thus, the Plaintiffs' programs can be no worse off than they were without the funds.

Upon accepting these conditions, applicants simply agree that their law-enforcement activities will not impair the federal government's law-enforcement activities against suspected or convicted criminals. The structure of the Immigration and Nationality Act ("INA") contemplates that States and localities may prosecute and incarcerate for criminal offenses aliens who may be removable and, indeed, aliens as to whom a removal order has already issued, but that federal custody of such aliens will commence upon their release. It is crucial to this cooperative law-enforcement framework that States and localities respond to requests for release-date information and permit federal agents to engage in voluntary interviews before releasing aliens from custody; the grant conditions are simply a modest effort to further that purpose, using authority lawfully delegated by Congress.

As discussed above and in Defendants' opening brief, the grant conditions at issue in this case seek to advance the federal government's legitimate interest in the orderly enforcement of the nation's immigration laws, with respect to individuals who have themselves been either prosecuted, charged, or otherwise detained under state criminal law. In response, Plaintiffs argue that the Defendants' assertion that they seek to ensure information sharing is intended to advance federal law enforcement policies is somehow "deceptive," because immigration proceedings are civil in nature. *See* Pls'. Closing Br. at 2. The federal government, it goes without saying, routinely enforces any number of law enforcement purposes and priorities through a variety of means apart from direct criminal prosecution, including civil proceedings and administrative actions, and indeed, the payment of grant funds. Nowhere, either as a matter of logic or law, is there a requirement that a federal law enforcement interest can only be furthered where the activity in question is guaranteed to end in federal criminal prosecution. Moreover, the term "criminal justice" is defined broadly under the Byrne JAG statute. *See* 34 U.S.C. § 10251(a)(1). There, Congress defined it to mean *more* than simply prosecuting individuals for violations of criminal law. Rather, it includes "activities pertaining

to crime prevention, control, or reduction" in addition to the mere "enforcement of the criminal law." *Id.* Here, it is important to remember that the challenged conditions focus on identifying criminal aliens. Once removed, a criminal alien has no opportunity to re-offend, which controls, prevents, and reduces crime. Thus, the challenged conditions fall squarely within this definition of "criminal justice," even if immigration enforcement itself is considered to be civil in nature.

Indeed, the propriety of the notice and access special conditions is underscored by the provisions in the Byrne JAG statute that authorize the Attorney General to reasonably require "programmatic" information about the funded program, 34 U.S.C. § 10153(A)(4), and to demand "appropriate coordination" with "affected" agencies, *id.* § 10153(A)(5)(C). Notice of an alien's release from local custody constitutes reasonable information about the law-enforcement and corrections programs funded by the grants. *See id.* § 10152(a)(1). And access to an alien in local custody constitutes appropriate coordination with federal immigration authorities affected by those programs' custody over the alien.

## II. The Challenged Byrne JAG Conditions are Valid.

### A. The Plaintiffs fail to explain what "placing special conditions" and "determining priority purposes" mean in Section 10102(a)(6).

The AAG imposed the notice and access conditions under his authority to, among other things, "exercise such other powers and functions as may be vested in [the AAG] pursuant to [Chapter 101 of Title 34] or by delegation of the Attorney General, including *placing special conditions* on all grants, and *determining priority purposes* for formula grants." 34 U.S.C. § 10102(a)(6) (emphasis added). As discussed in the Defendants' opening brief, Congress added the language regarding special conditions and priority purposes in the same statute that created the current version of the Byrne JAG program in 2006. *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Support of Defendants' Motion to Dismiss, or, in the Alternative, Motion for Partial Summary Judgment (ECF No. 23-1) ("Defs.' Opening Br."), at 13. The Plaintiffs, however, seek to

read this new authority out of the statute, urging that the provision means only that the "AAG has the power to place special conditions on grants only to the extent that such power has been vested in him or her pursuant to this chapter or by delegation of the Attorney General." Pls.' Closing Br., at 9 (internal quotation marks and emphasis omitted).

Congress' 2006 amendment must mean *something,* however, and Plaintiffs' reading would render it meaningless. The canon against surplusage – relied upon by the Plaintiffs themselves (*see id.* at 11) – is a "cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (internal quotation marks omitted). The best that the Plaintiffs can do is to essentially argue that this language merely permits the AAG to exercise powers delegated by the Attorney General. *See* Pls.' Opening Br., at 9-10. Yet, the Attorney General *already* is statutorily-authorized to delegate his authority to other officers within the Department of Justice: "The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." 28 U.S.C. § 510. Moreover, Section 510 *preexisted* the 2006 amendments to the Byrne JAG statute by forty years. *See* Pub. L. No. 89-554, § 4(c), 80 Stat. 612 (1966). Thus, under the Plaintiffs' reading, the 2006 Byrne JAG amendments do nothing other than what the decades-old language of Section 510 already permits.

The Plaintiffs' interpretation thus renders Congress' express addition of the "including" clause superfluous in two ways. First, Congress would not have needed to clarify that the AAG could impose "special conditions" and determine "priority purposes" for grants if other provisions of Chapter 101 specifically vested that authority in the AAG or if the Attorney General had delegated that authority to the AAG. Second, the authority to impose "special conditions" and determine "priority purposes" does not exist elsewhere in Chapter 101, Title 34, or Title 28 (which, among other things, specifies the functions of the Attorney General). Thus, under the Plaintiffs' logic, the only

thing Congress theoretically could have been trying to accomplish when it amended § 10102(a)(6) was to specify that *if* it *later* enacted statutes authorizing the Attorney General or AAG to impose "special conditions" and determine "priority purposes," it would be permissible for the AAG to exercise that authority.

But, of course, that hypothetical-authority interpretation is completely implausible. Instead, as the legislative history makes clear, the "including" clause "allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. 109-233, at 101 (2005). While the Plaintiffs would like to artificially cabin the reach of the "including" clause (*see* Pls.' Opening Br., at 9), this crabbed interpretation is at odds with both the legislative history and the long-acknowledged grammatical fact that the term "including" can instead mean "and" or "in addition to." *See, e.g., Adams v. Dole*, 927 F.2d 771, 775-77 (4th Cir. 1991); *see also American Sur. Co. of N.Y. v. Marotta*, 287 U.S. 513, 517 (1933) ("'include' is frequently, if not generally, used as a word of extension or enlargement").

Moreover, the Plaintiffs' approach here fails to recognize that this authority has been used ever since 2006 to place a variety of conditions on grants, without any indication of congressional concern, and calls into question the Defendants' authority to impose *any* special conditions on the Byrne JAG grants, not just conditions that the Plaintiffs happen to dislike or seek to challenge at this time. For example, under Plaintiffs reading, prior special conditions such as information-technology requirements, (*see* Byrne JAG FY 17 Award to City of Providence, (ECF No. 20-3), at ¶¶ 29-30); protections for human-research subjects (*id.* at ¶ 31); restrictions on the purchase of certain military-style equipment (*id.* at ¶¶ 45-50); requirements regarding body-armor purchases (*id.* at ¶ 41); and training requirements (*id.* at ¶ 34), would all be similarly impermissible, although Plaintiffs fail to meaningfully address this consequence of their reading of the statute. None of these special conditions has ever been questioned by Congress or challenged as ultra vires by a grant recipient,

including the Plaintiffs. Similarly, although certain conditions relating to body armor were codified in 2016, *see* 34 U.S.C. § 10202(c)(1)(B), (C), that occurred *only after* the AAG imposed them as special conditions in 2012. And the AAG has imposed an "American-made" requirement for body-armor purchases, which Congress has not chosen to codify. Byrne JAG FY 17 Award to City of Providence, (ECF No. 20-3), at ¶ 41. The Plaintiffs cannot account for the AAG's past adoption of these special conditions. Indeed, the Plaintiffs provide no explanation or limiting principle to explain the congressional acquiescence, or justify why the remaining conditions are valid under their preferred reading of the statute, while those challenged in this lawsuit are not.

### B. The Section 1373 Certification Condition is statutorily authorized and applies broadly to all federal laws applicable to the Plaintiffs, not merely those related to grants.

As discussed in Defendants' opening brief, Byrne JAG applications must include "[a] certification, made in a form acceptable to the Attorney General" that "the applicant will comply with all provisions of [the Byrne JAG Program] and all other applicable Federal laws." 34 U.S.C. § 10153(A)(5)(D). In accordance with the prior Administration's determination that 8 U.S.C. § 1373 is an "applicable Federal law[]" for purposes of the statutorily required certification, AR 00435, AR 00431-34 (October 2016 guidance to JAG grantees), beginning in FY 2017, OJP required that grant applicants explicitly certify compliance with § 1373 as part of their Byrne JAG applications. *See, e.g.*, AR00994-01037 (FY 2017 state solicitation); AR 01037 (FY 2017 certification form). The § 1373 certification condition is consistent with the statutory text. In the context of the Byrne JAG statute, the phrase "applicable Federal laws" covers laws that apply to Byrne JAG applicants and are constitutionally applied as grant conditions. Section 1373 indisputably applies to Plaintiffs—subsection (a) applies to any "State" or "local government entity or official," and subsection (b) applies to any "person or agency." Indeed, the Plaintiffs accepted a similar condition in choosing to take a FY 2016

grant, without objection. *See* AR 00317.

Now, however, Plaintiffs argue that "all applicable Federal laws" must not mean what it says, and instead, that it refers to only grant-related laws. *See* Pls.' Closing Br., at 11-12. The statute's plain text, however, does not support this restrictive interpretation because it refers to "*all other* applicable Federal laws." 34 U.S.C. § 10153(A)(5)(D) (emphasis added). If Congress had intended to limit the certification to "all laws applicable to Federal grantees," it could have done so expressly, as Congress has previously done in other contexts. *See, e.g.*, 42 U.S.C. § 16154(g)(1) ("consistent with the generally applicable Federal laws and regulations governing awards of financial assistance, contracts, or other agreements"); Water Resources Reform and Development Act of 2014, Pub. L. No. 113-121, § 1043(a)(3)(C)(ii)(II), 128 Stat. 1193, 1246 ("will comply with all applicable Federal laws (including regulations) relating to the use of those funds"). As the Supreme Court has recognized, "[b]y itself, the phrase 'all other law' indicates no limitation." *Norfolk & W. Ry. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991).

### C. Section 1373 does not violate the Tenth Amendment.

At the outset, for the reasons discussed by the Defendants in their opening brief (*see* Defs.' Opening Br., at 32-34), there is no need for the Court to decide whether § 1373 is consistent with the Tenth Amendment as a stand-alone statute because the § 1373 certification condition falls comfortably within Congress' Spending Clause authority. Indeed, Plaintiffs offer no meaningful response to this Spending Clause analysis in their Closing Brief.

Even were the Court to reach the question, however, § 1373 is entirely consistent with the Tenth Amendment. As noted, the statute provides that "State" and "local government entit[ies] or official[s]" "may not prohibit, or in any way restrict," any government entity or official from sharing with federal immigration authorities "information regarding the citizenship or immigration status" of any individual. 8 U.S.C. § 1373(a); *see also id.* § 1373(b) (similar). The statute does not require

jurisdictions to regulate in a particular area, as in *New York v. United States*, 505 U.S. 144 (1992), and *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018). Nor does it require jurisdictions to enforce a federal regulatory scheme, as in *Printz v. United States*, 521 U.S. 898 (1997). Rather, § 1373 imposes a permissible information-sharing requirement that preempts state and local governments from hindering the federal government's enforcement of the immigration laws against individual aliens.

As applied here, § 1373 addresses the effects of state and local criminal custody on the INA regulatory scheme concerning the removal and detention of individual aliens. The INA provides that DHS "may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment." 8 U.S.C. § 1231(a)(4)(A). But within 90 days of "the date the alien is released from detention or confinement," DHS "shall remove" an alien subject to a final order of removal. *Id.* § 1231(a)(1)(A), (B)(iii). During this removal period, DHS "shall detain" the alien, and, if the alien has a qualifying criminal history, "[u]nder no circumstance[s]" shall DHS release the alien during the removal period. *Id.* § 1231(a)(2). Similarly, when an alien is not yet subject to a final order of removal, DHS may execute a warrant to arrest and detain the alien under § 1226(a) when he is released from local criminal custody – at which time an immigration court will make a determination concerning whether immigration detention is required – and, if the alien has a qualifying criminal history, DHS "shall" take the alien into custody "when the alien is released," *id.* § 1226(c).

In this context, a requirement that localities provide DHS with information regarding immigration status (such as an alien prisoner's release date, which is essential to determining when and how the alien can be removed)—or § 1373's narrower requirement that localities *may not restrict* their officers from sharing such information with DHS—merely prevents localities from using the criminal-law authority over aliens that Congress has allowed them to retain in a manner that frustrates the operation of the parallel federal regulatory scheme for potential removal or detention upon aliens'

release from local custody. *See Herrera-Inirio v. INS*, 208 F.3d 299, 307 (1st Cir. 2000) (observing, in rejecting Tenth Amendment challenge to a provision of the INA, that Congress "may freely displace or preempt state laws in respect to" immigration). Moreover, even if Congress had not enacted § 1373, a bar on state ability to frustrate the paramount federal interest over immigration matters would follow from basic principles of obstacle preemption. *See Arizona v. United States*, 567 U.S. 387, 399 (2012). Simply put, Congress did not create a scheme in which the federal government shall take custody of aliens upon their release from state criminal custody without having any mechanism for ascertaining when the alien would be released. The INA's allowance for state criminal custody to be completed before removal is premised on the assumption that the federal government will be able to learn such aliens' release dates and seamlessly take them into federal custody in a safe and orderly manner.

The legislative history of § 1373 confirms this understanding. Congress first prohibited restrictions on the sharing of "information regarding" an alien's "immigration status" as a response, in part, to laws enacted by "[v]arious localities" that "prevent[ed] local officials from disclosing the immigration status of individuals to INS." H.R. Rep. No. 104-725, at 391 (1996) (Conf. Rep.). The House Conference Report explained that the statute was intended to "give State and local officials the authority to communicate with the INS regarding the presence, whereabouts, or activities of illegal aliens." *Id.* at 383; *see id.* (the provision "is designed to prevent any State or local" prohibition or restriction on "any communication between State and local officials and the INS").

Indeed, especially given its "plenary authority over immigration matters," *Herrera-Inirio*, 208 F.3d at 307, Congress could have provided for immediate removal of aliens regardless of pending local criminal prosecutions. Allowing local criminal custody to continue while requiring that localities facilitate the effectuation of—or at least not interfere with—an orderly transfer to federal officers at the end of such custody does not in any sense "commandeer" the locality into enforcing

federal law, but merely places conditions on the locality's exercise of its own regulatory authority. *See Hodel v. Va. Surface Mining & Reclamation Assoc., Inc.*, 452 U.S. 264, 290-91 (1981) ("We fail to see why the Surface Mining Act should become constitutionally suspect simply because Congress chose to allow the States a regulatory role."). In sum, so long as Congress is expressly (or implicitly) preempting a locality from interfering with federal regulation of private parties, it is not impermissibly regulating the locality directly.

In contrast, Plaintiffs assert that they may affirmatively restrict the ability of otherwise-willing local officials to provide the minimal cooperation needed for federal officials to exercise their duties. Indeed, they believe that they may refuse to help with the problems created by their own exercise of regulatory authority over persons who are also subject to federal regulatory authority. This gets things exactly backwards. By affirmatively asserting criminal custody over aliens whom the federal government seeks to detain and remove, Plaintiffs' scheme will impair the exercise of the parallel federal scheme unless Plaintiffs terminate custody in a manner that does not hinder the federal government in assuming custody. It is precisely when two regulatory schemes collide in this fashion that the Supremacy Clause authorizes Congress – as it has done through § 1373 – to prohibit a locality from using its authority to create an obstacle to the functioning of the federal scheme.

Moreover, even if § 1373 can also properly be analyzed apart from the INA's general regulatory scheme, a requirement to respond to, or not interfere with, a federal inquiry about an alien's release date or other information regarding immigration status would in no sense be "commandeering" local officials to execute federal law. In *Printz*, although the Supreme Court held that local law-enforcement officers could not be required to perform background checks to validate the legality of gun sales under federal law, it distinguished statutes that "require only the provision of information to the Federal Government," as they "do not involve . . . the forced participation of the States' executive in the actual administration of a federal program." *Printz*, 521 U.S. at 918. The

-11-

Supreme Court's Tenth Amendment cases are not properly read to invalidate reporting requirements, such as the requirement for "state and local law enforcement agencies to report cases of missing children to the Department of Justice." *Id.* at 936 (O'Connor, J., concurring) (citing 42 U.S.C. § 5779(a)); *see Reno v. Condon*, 528 U.S. 141, 151 (2000) (Constitution does not prohibit federal enactments that "do[] not require the States in their sovereign capacity to regulate their own citizens," but instead "regulate[] the States as the owners of data bases").

At bottom, § 1373 prohibits restrictions on information sharing rather than affirmatively mandating information sharing, making the statute *less intrusive* because it allows local and state officials to individually refuse to provide information to DHS. The federal government is not requiring Plaintiffs to enforce federal law by arresting particular individuals or extending their time in state or local custody. *See Printz*, 521 U.S. at 926 (citing *New York*, 505 U.S. at 188). Instead, it is the federal government that seeks to assume custody, and only of those aliens whom Plaintiffs have already decided, for their own reasons, to take into custody pursuant to state criminal law. The federal government bears sole responsibility for the actions it takes with respect to private persons pursuant to its regulatory authority; the information sharing conditions at issue merely allow federal actors to take lawful action in an informed, timely, and safe manner. In sum, § 1373 is valid under the Tenth Amendment both because it is a valid preemption provision and because it is limited to information sharing.

### D. The Section 1373 Condition does not nationalize local police forces or violate 34 U.S.C. § 10228(a).

Contrary to the Plaintiffs' suggestion (*see* Pls.' Closing Br., at 13), 34 U.S.C. § 10228(a) does not prohibit the § 1373 certification condition. Section 10228(a) prohibits the federal government from "exercise[ing] any direction, supervision or control over any police force or any other criminal justice agency" of any state or locality. 34 U.S.C. § 10228(a). The point of this statute is to ensure that the federal government does not nationalize state and local police forces. As the Fourth Circuit

has explained, "[t]he dominant concern of Congress apparently was to guard against any tendency towards federalization of local police and law enforcement agencies." *Ely v. Velde*, 451 F.2d 1130, 1136 (4th Cir. 1971). The § 1373 certification condition does no such thing. After all, the Byrne JAG grant program is *voluntary*. The Plaintiffs consent to the conditions that are attached to the Byrne JAG grants. The Department of Justice is not forcing conditions on state or local law enforcement agencies. At all times, the Plaintiffs are free to forego Byrne JAG program funds if any particular condition proves undesirable or unpalatable, but they are not free to dictate the terms on which they may help themselves to federal funds, ignoring lawfully imposed conditions in the process.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion for partial summary judgment and grant the Defendants' motion to dismiss the Plaintiffs' claims challenging the FY 2017 immigration conditions, or alternatively, grant Defendants' motion for partial summary judgment on those same claims.

Dated: May 1, 2019

Respectfully submitted,

AARON L. WEISMAN
United States Attorney

JOSEPH H. HUNT
Assistant Attorney General

JOHN R. TYLER
Assistant Director

 /s/ *Daniel D. Mauler*
DANIEL D. MAULER
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
(202) 616-0773 / (202) 616-8470 (fax)
dan.mauler@usdoj.gov

                     _/s/ Zachary A. Cunha_
                     ZACHARY A. CUNHA (Bar No. 7855)
                     Assistant United States Attorney
                     50 Kennedy Plaza, 8th Floor
                     Providence, RI 02906
                     (401) 709-5000  /  (401) 709-5001 (fax)
                     Zachary.Cunha@usdoj.gov

## CERTFICATE OF SERVICE

      I hereby certify that, on May 1, 2019, I caused the foregoing document to be filed by means of this Court's Electronic Case Filing (ECF) system, thereby serving it upon all registered users in accordance with Federal Rules of Civil Procedure 5(b)(2)(E) and 5(b)(3) and Local Rules Gen 304 and 305.

             By:    _/s/ Zachary A. Cunha_
                       Zachary A. Cunha
                       Assistant United States Attorney