IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CITY OF PROVIDENCE, *et al.,* <br><br>     *Plaintiffs,* <br><br>        v. <br><br> WILLIAM P. BARR, *et al.,* <br><br>     *Defendants.* | Civil Action No. 18-CV-437-JJM-LDA |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS,
OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................2

    I.    The Public-Disclosure Condition is Permissible...........................................................2

        A.   This Requirement is Authorized by Statute and Does Not Violate the
            Separation of Powers. .......................................................................................2

        B.   This Requirement is Consistent with the Spending Clause...............................5

            1.    The Requirement is Related to the Purposes of the Byrne JAG Program. .............5

            2.    The Requirement is Unambiguous. .................................................................7

    II.   The Public-Disclosure Condition is Consistent with the Administrative
        Procedure Act.................................................................................................................8

    III.  The FY 2018 Section 1373 / 1644 Compliance Condition Remains a Valid
        Exercise of Preemption Authority. ................................................................................9

    IV.  Defendants Properly Rely Upon *City of Los Angeles v. Barr*. ................................... 10

    V.   Any Injunction Should Be Limited to the Plaintiffs. ................................................... 12

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Benning v. Georgia,*
391 F.3d 1299 (11th Cir. 2004) ...................................................................................7, 8

*California v. Sessions,*
284 F. Supp. 3d 1015 (N.D. Cal. 2018) ...........................................................................6

*City of Los Angeles v. Barr,*
929 F.3d 1163 (9th Cir. 2019) .................................................................................. 10, 11

*Charles v. Verhagen,*
348 F.3d 601 (7th Cir. 2003) ...........................................................................................7

*Duvall v. Atty. Gen. of U.S.,*
436 F.3d 382 (3d Cir. 2006) .............................................................................................5

*Eringer v. Principality of Monaco,*
No. CV 10-1803 GAF (EX), 2011 WL 13134271 (C.D. Cal. Aug. 23, 2011)................3

*FCC v. Fox Television Stations, Inc.,*
556 U.S. 502 (2009) .........................................................................................................8

*Garcia v. United States,*
469 U.S. 70 (1984)............................................................................................................4

*Holder v. Hall,*
512 U.S. 874 (1994) .........................................................................................................4

*Mayweathers v. Newland,*
314 F.3d 1062 (9th Cir. 2002) .............................................................................. 1, 5, 7

*Murphy v. Nat'l Collegiate Athletic Ass'n,*
138 S. Ct. 1461 (2018) ...................................................................................................10

*New York v. United States,*
505 U.S. 144 (1992) ......................................................................................................1, 5

*Providence Yakima Med. Ctr. v. Sebelius,*
611 F.3d 1181 (9th Cir. 2010) ......................................................................................1, 8

*South Dakota v. Dole,*
483 U.S. 203 (1987) .........................................................................................................5

*Van Wyhe v. Reisch,*
581 F.3d 639 (8th Cir. 2009) ...........................................................................................7

**STATUTES**

5 U.S.C. § 552(b)(7) ............................................................................................................3

8 U.S.C. § 1226(c) ..............................................................................................................5

8 U.S.C. § 1228(a) ..............................................................................................................5

8 U.S.C. § 1231(a)(6) .........................................................................................................5

8 U.S.C. § 1325(a) ...........................................................................................................5, 7

8 U.S.C. § 1373 ...............................................................................................................1, 9

8 U.S.C. § 1378 ..................................................................................................................5

8 U.S.C. § 1644 ...............................................................................................................1, 9

34 U.S.C. § 10102(a)(2) ...................................................................................................1, 2

34 U.S.C. § 10102(a)(6) ...................................................................................................2, 4

34 U.S.C. § 10251(a)(1) .....................................................................................................6

34 U.S.C. § 10152(a)(1) ...................................................................................................11

34 U.S.C. § 10153(a) ..........................................................................................................2

34 U.S.C. § 10153(a)(5)(D) ................................................................................................2

Pub. L. No. 90-351, 82 Stat. 197 (1968) ..........................................................................11

## INTRODUCTION

This case asks whether the Department of Justice can require recipients of Byrne JAG funds to refrain from publicly disclosing federal law enforcement information for the purpose of shielding from detection unlawfully present aliens and fugitives. Plaintiffs ignore or discount the statutes and standards that govern their challenge to these requirements. Specifically, Plaintiffs discount Congress' mandate for the Assistant Attorney General of the Office of Justice Programs ("OJP") to "maintain liaison" with state and local governments "in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), essentially arguing that that authority makes the AAG only a messenger. Plaintiffs also ignore both the Supreme Court's instruction that the "relatedness" aspect of the Spending Clause requires only "some relationship" between spending conditions and the purposes of the program involved, *New York v. United States*, 505 U.S. 144, 167 (1992), and the observation that this "low-threshold" inquiry is "a far cry from imposing an exacting standard," *Mayweathers v. Newland,* 314 F.3d 1062, 1067 (9th Cir. 2002). Similarly, Plaintiffs discount that the "arbitrary and capricious" standard under the Administrative Procedure Act ("APA") is "highly deferential" to the agency. *See Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010). Further, Plaintiffs ignore well-settled preemption principles that support the constitutionality of 8 U.S.C. §§ 1373 and 1644. Finally, Plaintiffs continue to improperly seek a program-wide injunction that extends beyond the Plaintiffs and into new fiscal years, and with respect to conditions that have not even been written yet.

Under the statutes and standards that govern here, Plaintiffs' challenge to the FY 2018 Byrne JAG Program should be dismissed.[1] The AAG's authority to "maintain liaison" (together with his

---

[1] As noted in their opening memorandum (Dkt. No. 40-1), Defendants recognize that this Court has previously ruled against certain FY 2017 Byrne JAG conditions that are similar, in some respects, to the notice, access, and information conditions in the FY 2018 Byrne JAG Program. Defendants reiterate and preserve their prior arguments regarding those issues, *see* Defendants'

other statutory authorities) requires him to facilitate a close bond of cooperation between federal law enforcement and state and local enforcement.  This authority fully supports both the public-disclosure condition and the requirement for Byrne JAG applicants to provide information about its laws and policies on communicating with certain law enforcement authorities.  These requirements, moreover, bear more than "some relationship" to the purposes of the Byrne JAG Program, as the subject requirements and the Program seek to further criminal justice and public safety.  And these requirements are more than reasonable under the APA, especially given the demonstrated need to protect federal law enforcement information to safeguard federal officers, the suspects they encounter, and the general public.

## ARGUMENT

I.   **The Public-Disclosure Condition is Permissible.**

A.  **This Requirement is Authorized by Statute and Does Not Violate the Separation of Powers.**

Congress authorized the Assistant Attorney General ("AAG") for OJP to "maintain liaison with . . .  State governments in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), to dictate the "form" of Byrne JAG applications, *id.* § 10153(a), to place "special conditions on all grants" and determine "priority purposes for formula grants," *id.* § 10102(a)(6), and to require compliance with all "applicable Federal laws," id. § 10153(a)(5)(D).  These authorities amply support the public-disclosure condition, the requirement for Byrne JAG applicants to provide information about certain of their laws and policies, and the certifications required by OJP.

---

Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Support of Defendants' Motion to Dismiss, or, in the Alternative, Motion for Partial Summary Judgment (ECF No. 23-1); Defendants' Reply in Further Support of their Motion to Dismiss, or, in the Alternative, for Partial Summary Judgment (ECF No. 28), and will not address Plaintiffs' arguments on those issues here.

These requirements enable federal, state, and local law enforcement officials to work together effectively and safely, such that they readily fall within the AAG's authority to "maintain liaison." *Id.* § 10102(a)(2). Operational security – the confidentiality of law enforcement operations – is essential to such operations. Thus, for example, the federal Freedom of Information Act protects the confidentiality of operational law enforcement information. *See* 5 U.S.C. § 552(b)(7) (exempting "records or information compiled for law enforcement purposes" to the extent disclosure "could reasonably be expected to interfere with enforcement proceedings" or "disclose techniques and procedures for law enforcement investigations or prosecutions").

In arguing to the contrary, the Plaintiffs assert that this authority encompasses only ministerial responsibilities, such as creating a form. *See, e.g.*, Reply Memorandum in Further Support of Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 43-1) (hereinafter, "Pls.' Memo."), at 13-15. One who "maintains liaison," however, is much more than a mere clerk. A liaison is defined as "a close bond or connection" or "a person who establishes and maintains communication for mutual understanding and cooperation." *See Liaison*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1998). Thus, the AAG is responsible for maintaining "a close bound or connection" between federal and state criminal justice authorities and for facilitating "mutual understanding and cooperation" among such authorities. In order to work together effectively and safely, the free flow of law enforcement information is essential. This clearly encompasses, at minimum, protecting the confidentiality of federal law enforcement information provided to state and local agencies and assessing the ability of such agencies to engage in law enforcement cooperation by gathering information about their laws and policies. *Cf. Eringer v. Principality of Monaco*, No. CV 10-1803 GAF (EX), 2011 WL 13134271, at *5 (C.D. Cal. Aug. 23, 2011), *aff'd*, 533 F. App'x 703 (9th Cir. 2013) (stating that plaintiff's contract for "maintaining liaison" between

3

Principality and foreign intelligence agencies entailed "regularly shar[ing] sensitive intelligence information").

One important aspect of the "liaison" duty is to ensure adequate "deconfliction" between federal and state or local law enforcement agencies.  When agencies conduct law enforcement operations, they must "de-conflict" to protect officer safety and ensure that other agencies do not inadvertently jeopardize their operations.  *See, e.g.*, Nationwide Officer Safety Event Deconfliction, National Criminal Intelligence Resource Center, https://www.ncirc.gov/Deconfliction/ (last visited Apr. 7, 2019); Best Practices in Event Deconfliction, Commission on Accreditation for Law Enforcement Agencies, https://www.calea.org/sites/default/files/EventDeconfliction_ PoliceFoundation.pdf (last visited Apr. 7, 2019).  When agencies operate in isolation, no agency has the complete picture, and the implications for public safety can be dire.  Obviously, information-sharing diminishes if agencies fear that recalcitrant jurisdictions will publicly release information shared through these channels for purposes of subverting the law.

Assuming any further authority were needed here, the public-disclosure condition also falls within OJP's authority to place "special conditions on all grants" and to determine "priority purposes for formula grants."  34 U.S.C. § 10102(a)(6).  These are "special conditions," and they prioritize certain federal law enforcement funds for States and localities that protect the confidentiality of federal law enforcement information.  This interpretation is supported by the legislative history of the Section 10102(a)(6), which omits "including" from the following: "Subsection 242(b) allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants."  H.R. Rep. No. 109-233, at 101 (2005).  The Supreme Court has "repeatedly stated that [when resort to legislative history is necessary,] the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill [in question], which represent the considered and collective understanding of those Congressmen

4

involved in drafting and studying proposed legislation." *Garcia v. United States*, 469 U.S. 70, 76 (1984) (citation omitted); *see Holder v. Hall*, 512 U.S. 874, 932 n. 28 (1994) (Thomas, J., concurring). The Plaintiffs essentially ignore the statutory text and the committee's straightforward statement about the AAG's authority in their closing brief.

### B.  This Requirement is Consistent with the Spending Clause.

In relation to the Plaintiffs' claims under the Spending Clause, the public-disclosure condition is related to the criminal-justice and public-safety purposes of the Byrne JAG Program and is sufficiently clear to enable potential applicants to "exercise their choice knowingly, cognizant of the consequences of their participation." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987).

### 1.  The Requirement is Related to the Purposes of the Byrne JAG Program.

The Plaintiffs ignore the governing standard for relatedness under the Spending Clause. The Supreme Court has held that the Constitution requires only "some relationship" between spending conditions and the purposes of the program involved, *New York v. United States*, 505 U.S. 144, 167 (1992), and this "low-threshold" inquiry is "a far cry from imposing an exacting standard," *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002).

In their closing brief, Plaintiffs ignore the multiple ways in which criminal law is intertwined with immigration law. *See* Pls.' Memo., at 3-4. Most simply, Plaintiffs ignore that it is a criminal violation to illegally enter the United States. *See* 8 U.S.C. § 1325(a) (making a first offense of illegal entry a criminal misdemeanor punishable by six-months imprisonment). Among other things, the term "criminal alien" appears multiple times in the Immigration and Nationality Act ("INA"), and "[a] primary goal of several recent overhauls of the INA has been to ensure and expedite the removal of aliens convicted of serious crimes." 8 U.S.C. §§ 1226(c), 1228(a), 1231(a)(6), 1378; *Duvall v. Atty. Gen. of U.S.*, 436 F.3d 382, 391 (3d Cir. 2006). All of the conditions relate to efforts to remove aliens apprehended for their involvement in criminal activity. The requirement challenged

here ensures that any "program or activity" funded under the Byrne JAG Program does not thwart the federal government's exercise of its authority to remove aliens not lawfully present in the United States or removable due to a criminal conviction – thus also serving the purposes of the program.

Contrary to the Plaintiffs' argument, the relatedness inquiry does not ask whether the purpose of the Byrne JAG Program encompasses assisting in or cooperating with federal civil immigration enforcement, but whether these particular requirements are sufficiently related to the purposes of the Byrne JAG Program. The relationship between criminal justice and the Byrne JAG requirements now at issue is evident from the statute and background law. Importantly, the term "criminal justice" is defined broadly under the Byrne JAG statute. *See* 34 U.S.C. § 10251(a)(1). There, Congress defined it to mean *more* than simply prosecuting individuals for violations of criminal law. Rather, it includes "activities pertaining to crime prevention, control, or reduction" in addition to the mere "enforcement of the criminal law." *Id.* Once removed, a criminal alien has no opportunity to re-offend, which controls, prevents, and reduces crime. This is particularly true given the high recidivism rates, indicating that it is likely that a criminal alien not removed will again engage in future criminal activity. *See* Marial Alper, Mathew R. Durose, & Joshua Markman, *2018 Update on Prisoner Recidivism: A 9-Year Follow-UP Period (2005-2014)*, Bureau of Justice Statistics (May 23, 2018), https://www.bjs.gov/index.cfm?ty=pbdetail&iid=6266. Moreover, ensuring that immigration enforcement efforts are not in conflict with the activities of local criminal law enforcement is an essential component of proper management of dual law enforcement entities. *Cf. California v. Sessions*, 284 F. Supp. 3d 1015, 1033 (N.D. Cal. 2018) (noting that "criminal law impacts the INA in a variety of ways" and that "the relationship the government needs to add conditions to the receipt of grants does not need to be close"). Thus, preventing the disclosure of federal law enforcement information that is shared with funded "programs or activities" to ensure the safety and avoid conflicts between the operations of two authorized law enforcement agencies is

6

necessarily related to the criminal-justice purposes of the Byrne JAG Program.  The challenged

conditions fall squarely within the ambit of the statutory definition of "criminal justice," even where

the federal government elects to enforce the immigration law through civil rather than criminal

process.  *Cf.*, *e.g.*, 8 U.S.C. § 1325(a) (making even a first offense of illegal entry a criminal

misdemeanor).

  Moreover, the "federal law enforcement information" to be protected by the public-

disclosure condition encompasses any "law enforcement sensitive information communicated or

made available, *by the federal government*, to a State or local government entity," Pls.' Memo., Ex. P132,

at ¶ 44(4)(A)(2) (Dkt. No. 34-3) (Providence's FY 18 Byrne JAG award document) (emphasis

added), not just information regarding the enforcement of immigration law.  Further, the fact that

the public-disclosure condition forecloses grantees from disclosing federal law enforcement

information to conceal either unlawfully present aliens or fugitives from criminal justice further

shows the requirement's relationship to the "criminal justice" purposes of the Byrne JAG Program.

This condition seeks to prevent federal grantees from using federal law enforcement information to

defeat federal law enforcement objectives.

### 2.  The Requirement is Unambiguous.

  The challenged requirement also satisfies the governing standards on clarity under the

Spending Clause.  The courts hold that "the exact nature of [grant] conditions may be largely

indeterminate, provided that the existence of the conditions is clear, such that States have notice that

compliance with the conditions is required." *Charles v. Verhagen*, 348 F.3d 601, 607 (7th Cir. 2003)

(citation omitted); *see Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004) ("Once Congress

clearly signals its intent to attach . . . conditions . . . it need not specifically identify and proscribe in

advance every conceivable state action that would be improper." (citation omitted)); *see also Van

Wyhe v. Reisch*, 581 F.3d 639, 650 (8th Cir. 2009) (finding notice requirement satisfied even where

condition "provides a pliable standard"); *Mayweathers*, 314 F.3d at 1067 (finding notice requirement

satisfied even with a "standard [that] is perhaps unpredictable because it has resulted in different

determinations in different courts").

In arguing that the challenged requirement is ambiguous, the Plaintiffs appear to require the

Department of Justice to "specifically identify and proscribe in advance every conceivable . . . action

that would be improper," which the Spending Clause does not require.  *See Benning*, 391 F.3d at

1306.  The challenged requirements are set forth at some length, with definitions and Rules of

Construction as needed, which more than satisfies the Spending Clause's standards of clarity.  *See*

Pls.' Memo., Ex. P132, at ¶ 44(4) (Dkt. No. 34-3) (Providence's FY 18 Byrne JAG award document).

## II.     The Public-Disclosure Condition is Consistent with the Administrative Procedure Act.

In relation to their claim under the Administrative Procedure Act, the Plaintiffs fail to

explain how the challenged grant requirement can be "arbitrary and capricious" under the APA if it

is statutorily authorized and comports with the Spending Clause, as shown above.  In any event, the

public-disclosure condition readily satisfies this "highly deferential" standard, *see Providence Yakima*

*Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010), especially in light of the actual disclosure of

an impending federal law enforcement operation by an elected official in California.  *See* Admin.

Record at AR01038-39.  It is "entirely rational" for OJP to deny federal law enforcement funding to

a jurisdiction that publicly discloses sensitive federal law enforcement information in an attempt to

shield an alien or a fugitive from detection or that refuses to provide information about its laws or

policies on communicating with certain federal law enforcement authorities.  *See FCC v. Fox*

*Television Stations, Inc.*, 556 U.S. 502, 517 (2009).

In response, the Plaintiffs argue that the advanced disclosures of federal law enforcement

operations by the mayor of Oakland are insignificant and insufficient to justify a special condition.

Pls.' Memo., at 12-13.  But the APA does not require evidence of a large problem of unauthorized

disclosures to establish the reasonableness of conditioning federal law enforcement funds on

protecting federal law enforcement information.  Even aside from the common-sense nature of such

a requirement and the real-world experience of this disclosure, the Plaintiffs' laws and policies create

a concern that city officials may engage in such disclosures in the future.

### III.   The FY 2018 Section 1373 / 1644 Compliance Condition Remains a Valid Exercise of Preemption Authority.

As explained by the Defendants in their previous brief, this Court need not reach the

constitutionality of 8 U.S.C. §§ 1373 or 1644.  *See* Defs.' Memo., at 26.  No party in this case seeks

an injunction ordering Plaintiffs to comply with those stand-alone statutes.  Instead, the FY 18

Byrne JAG program incorporated the substance of those statutes into an express condition.  *See* Pls.'

Memo., Ex. P130, at ¶ 42(1) (Dkt. No. 34-3) (Providence's FY 18 Byrne JAG award document).

While the condition does cite the statutes, it does so simply as a reference.  More importantly, the

condition's text goes on to expressly describe the conduct at issue.  *See id.*  Thus, the Defendants are

implementing a specific condition in the grant program rather than requiring compliance with

outside stand-alone statutes.  There is nothing wrong with this, and Plaintiffs' closing brief fails to

identify any legal authority that undercuts such action.[2]

In the event that the Court does reach the constitutionality of Sections 1373 or 1644, the

Defendants' previous brief sufficiently sets forth the reasons why those statutes survive scrutiny.  *See*

Defs.' Memo., at 31.  It is important to remember the Supreme Court's admonition in *Murphy* that

"it is a mistake to be confused by the way in which a preemption provision is phrased," because

---

[2] In their closing brief, Plaintiffs cite language from the FY 2018 Local Solicitation that supposedly requires grant recipients to agree to "[n]ot violate 8 U.S.C. § 1373" or Section 1644.  *See* Pls.' Memo., at 8.  It is important to remember, however, that the quoted language comes from the *Solicitation*, not the later award conditions.  The Solicitation provides general descriptions of future award conditions.  *See* FY 2018 Local Solicitation, attached as an exhibit to Pls.' Memo., Ex. P092 (Dkt. No. 34-3).  Moreover, the Solicitation makes clear that the language of the conditions in the later award document control in its reference to "the specific terms of those conditions are what will govern the awards. . . .".  *Id.*

"language might appear to operate directly on the States" – even in a targeted way – but in substance merely prevent the States from obstructing federal regulation of private parties. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018). The Plaintiffs' closing brief makes the same mistake warned of in *Murphy* and misunderstands the two statutes.

IV.    **Defendants Properly Rely Upon *City of Los Angeles v. Barr*.**

In their closing brief, Plaintiffs take issue with Defendants' reliance upon *City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019). *See* Pls.' Memo., at 9-11. Plaintiffs are mistaken, and Defendants commend this decision to the Court for consideration.

In their attempt to distinguish this case, Plaintiffs argue that *Los Angeles* dealt with a competitive grant and that the Notice and Access conditions operated as "scoring factors" rather than conditions on the receipt of funds. *See* Pls.' Memo., at 9-10. While true, this is a distinction without a difference, especially given the Plaintiffs' Spending Clause and APA challenges, which are substantially similar – if not identical – to the same challenges raised by the plaintiff in *Los Angeles*. *See Los Angeles*, 929 F.3d at 1172. The bottom line is that the Ninth Circuit approved DOJ's use of these conditions to advantage or disadvantage applicants in the grant process. This means that, in close calls, the conditions can be the deciding factor between a successful and an unsuccessful grant application. *See, e.g.*, *id.* at 1176-77. The Ninth Circuit also found that DOJ's determination that illegal immigration posed a public safety threat was imminently reasonable: "Under the APA, an agency must give adequate reasons for its decision and DOJ has done so here. DOJ has reasonably determined that illegal immigration enforcement is a public safety issue. . . ." *Id.* at 1182 (internal quotation marks omitted). If an immigration-focus in a public safety grant can help or hurt an applicant under the Spending Clause or the APA, there is no legal reason why the same focus cannot serve as a condition on receipt of funds in another public safety grant.

The Plaintiffs attempt to distinguish the grant program at issue in *Los Angeles* (the "COPS" grant program) with the Byrne JAG program by arguing that COPS was "designed to address crime and *disorder* and . . . otherwise enhance public safety." *See* Pls.' Memo., at 10 (emphasis in original) (internal quotation marks and citation omitted). Plaintiffs then argue that the Byrne JAG program "support[s] a broad range of criminal-justice related activities based on their own local needs and conditions." *Id.* at 11 (emphasis in original omitted). Plaintiffs' attempt, however, fails, as can be seen in the overlapping goals and purposes of both grant programs. According to the Ninth Circuit, "[t]he general purpose of the Act [governing the COPS grant program] is to enhance the crime prevention functions of state and local law enforcement and to enhance public safety through interacting with and working with the community." *Los Angeles*, 929 F.3d at 1180 (citing 34 U.S.C. § 10381(b)). This compares favorably to Byrne JAG's statutory purpose to promote "the effectiveness . . . and coordination of law enforcement and criminal justice systems at all levels of government," Pub. L. No. 90-351, 82 Stat. 197, 197 (1968). *See also* 34 U.S.C. § 10152(a)(1) (authorizing OJP to "make grants to States and units of local government . . . to provide additional personnel, equipment . . . and information systems for criminal justice."). Considering the broad reach of the statutory definition of "criminal justice" in the Byrne JAG program (*see* 34 U.S.C. § 10251(a)(1) (defining "criminal justice" to include various activities of the police, the courts, and "related agencies" that "pertain[] to crime prevention, control, or reduction"), Byrne JAG's statutory purposes and scope substantially mirror that of the COPS grant program. The Ninth Circuit, in discussing the COPS grant program, explained that "an award of grant funds to states or localities that intend to focus on illegal immigration is well within the statue's scope, and DOJ has broad discretion to adopt such a focus area." *Id.* at 1181. DOJ's discretion to focus on illegal immigration in the Byrne JAG program is equally reasonable and within the scope and purposes of the grant program, justifying the public-disclosure condition, the FY 2018 Section 1373 / 1644 compliance

condition, and the related certifications.  In other words, Defendants' reliance upon *Los Angeles* is well placed.

## V.   Any Injunction Should Be Limited to the Plaintiffs.

Lastly, despite the pendency of similar litigation in several jurisdictions throughout the country, the Plaintiffs persist in seeking a "program-wide" injunction.  Plaintiffs ignore the pendency of similar litigation in other courts and fail to explain how a resulting conflict could be solved if courts in two or more of these actions were to issue contradictory nationwide injunctions.  Obviously, the best approach – even aside from the jurisdictional and equitable problems with ordering relief that affects parties not before the court – is to avoid such a conflict by limiting any injunction in each case to the Plaintiffs.

Plaintiffs also improperly raise the issue of the FY 2019 Byrne JAG conditions at the end of their last brief.  *See* Pls.' Memo., at 16-17.  The FY 2019 Byrne JAG conditions are not properly a part of this case, and the Defendants have no opportunity to support them with citations to an Administrative Record.  The Plaintiffs ask this Court to extend any injunction to reach conditions that have not been litigated in this case.  The Court should reject such an invitation, and instead, leave any new conditions to another day, when they can be fully and fairly litigated.

## CONCLUSION

Accordingly, for these reasons and for those stated in the Defendants' opening memorandum, the Court should dismiss the Plaintiffs' challenges to the public-disclosure condition and the certification requirement in the FY 2018 Byrne JAG Program and deny the Plaintiffs' Motion for Partial Summary Judgment on those challenges as well.

Respectfully submitted,

AARON L. WEISMAN
United States Attorney

JOSEPH H. HUNT
Assistant Attorney General

BRAD P. ROSENBERG
Assistant Branch Director

/s/ Daniel D. Mauler
DANIEL D. MAULER
Virginia State Bar No. 73190
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20001
Tel: (202) 514-8095
Fax: (202) 616-8470
E-mail: dan.mauler@usdoj.gov

 /s/ Zachary A. Cunha
ZACHARY A. CUNHA (Bar No. 7855)
Assistant United States Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02906
(401) 709-5000  /  (401) 709-5001 (fax)
Zachary.Cunha@usdoj.gov

## **CERTFICATE OF SERVICE**

I hereby certify that, on October 16, 2019, I caused the foregoing document to be filed by means of this Court's Electronic Case Filing (ECF) system, thereby serving it upon all registered users in accordance with Federal Rules of Civil Procedure 5(b)(2)(E) and 5(b)(3) and Local Rules Gen 304 and 305.

By:      /s/ Daniel D. Mauler
         Daniel D. Mauler
         Trial Attorney
         U.S. Department of Justice