# CITY OF PROVIDENCE

Jorge O. Elorza, Mayor

October 24, 2019

**<u>VIA ELECTRONIC COURT FILING</u>**

The Honorable John J. McConnell, Jr., District Judge
U.S. District Court, District of Rhode Island
One Exchange Terrace
Federal Building and Courthouse
Providence, RI 02903

**RE:     <u>City of Providence et al v. Barr et al</u>**
         **<u>C.A. No. 1:18-cv-00437-JJM-LDA</u>**

Dear Judge McConnell:

        Enclosed please find two recent opinions by the United States District Court in the Northern District of Illinois. These opinions issued shortly after Plaintiffs City of Providence and City of Central Falls filed their reply memorandum on September 13, 2019 (*see Ptfs. Reply Mem., ECF No. 43-1*) on the pending cross-motions for summary judgment pending in the above-referenced case.

                                        Very truly yours,

                                        <u>/s/Jeffrey Dana</u> (#5580)
                                        Providence City Solicitor

                                        <u>/s/Matthew Jerzyk</u> (#7945)
                                        Central Falls City Solicitor

Enclosures
JD & MJ/mkmd

cc:     Zachary Cunha
        Daniel Mauler
        All CM/ECF filers in this case

## CITY SOLICITOR'S OFFICE

444 Westminster Street, Suite 220, Providence, Rhode Island 02903
401 680 5333 ph  |  401 680 5520 fax
**www.providenceri.com**

2019 WL 4511546
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

THE CITY OF CHICAGO, Plaintiff,

v.

WILLIAM P. BARR, in his official capacity as the
Attorney General of the United States, Defendant.

Case No. 18 C 6859
|
09/19/2019

Harry D. Leinenweber, Judge, United States District Court

**MEMORANDUM OPINION AND ORDER**

**\*1**  This litigation concerns the Executive Branch's ability
to attach conditions to money it offers to state and local
governments. In this case—the latest chapter of a dispute
playing out in district and appellate courts around the country
—the City of Chicago takes issue with the conditions that
the U.S. Attorney General placed on the FY 2018 Edward
Byrne Memorial Justice Assistance Grant ("Byrne JAG")
Program. The City contends that certain conditions attached
to Byrne JAG funds violate the constitutional requirements
of federalism and the separation of powers. For the reasons
stated herein, Defendant's Motion to Dismiss (Dkt. No. 42)
is granted in part and denied in part. Plaintiff's Motion for
Summary Judgment (Dkt. No. 48) is granted in part and
denied in part.

**I. BACKGROUND**

In addition to describing the most relevant facts here, the
Court incorporates those facts previously described in its
earlier ruling. See City of Chicago v. Sessions, 321 F. Supp.
3d 855 (N.D. Ill. 2018).

The Byrne JAG program is the primary source of federal
criminal justice funding available to state and local
governments. (Def.'s Resp. to Pl.'s Stmt. of Facts ("PSOF")
¶ 11, Dkt. No. 62.) This program is overseen by the Office of
Justice Programs (OJP) within the U.S. Department of Justice
(DOJ). (PSOF ¶ 11.) The Byrne JAG program distributes

funds by a statutorily-defined formula based on a state's
population and the number of violent crimes reported within
that jurisdiction in the past year. See 34 U.S.C. § 10156.
To receive Byrne JAG funds, a state or local government
must apply and comply with all conditions outlined in the
Solicitation document that the Attorney General provides. See
34 U.S.C. § 10153.

Chicago has received Byrne JAG funds every year since
2005. (PSOF ¶ 12.) But in 2017 the City ran into trouble
when it came time to apply for and accept Byrne JAG funds.
The Attorney General attached several new immigration-
related conditions to the FY 2017 funds that conflicted
with Chicago's stated policy goals of promoting cooperation
between local law enforcement and immigrant communities
and ensuring access to essential city services for all city
residents regardless of citizenship status. Therefore, in
August of 2017, the City sued the Attorney General (then
Jefferson Sessions) to enjoin his office from attaching those
conditions to the FY 2017 Byrne JAG funds. See City of
Chicago v. Sessions, No. 17-cv-5720 (N.D. Ill.).

In the 2017 case, Chicago challenged three conditions that
the Court will explain in detail later and will refer to as the
"notice, access, and Section 1373 compliance conditions."
In September of 2017, this Court issued a nationwide
preliminary injunction as to the notice and access conditions.
See City of Chicago v. Sessions, 264 F. Supp. 3d 933
(N.D. Ill. 2017). The Court denied the Attorney General's
request to stay the nationwide application of the preliminary
injunction. See City of Chicago v. Sessions, No. 17-cv-5720,
2017 WL 4572208 (N.D. Ill. Oct. 13, 2017). The Seventh
Circuit affirmed the Court's decision to grant the preliminary
injunction, but later decided to take up the limited issue
of the injunction's nationwide scope en banc. See City of
Chicago v. Sessions, 888 F.3d 272 (7th Cir. 2018) (affirming
the preliminary injunction), reh'g en banc granted in part,
opinion vacated in part, No. 17-2991, 2018 WL 4268817 (7th
Cir. June 4, 2018) (granting en banc review as to the issue of
whether a nationwide injunction was proper).

**\*2**  Then, in July 2018, this Court granted partial summary
judgment for the City. See City of Chicago v. Sessions,
321 F. Supp. 3d 855 (N.D. Ill. 2018). The Court held the
notice and access conditions unconstitutional because neither
the Byrne JAG statute nor any other federal law gave the
Attorney General statutory authority to impose them. Id.
at 873-74. The Court further found that 8 U.S.C. § 1373
is unconstitutional as it violates the anticommandeering

doctrine, and that therefore the Section 1373 compliance condition is unlawful because the Attorney General cannot demand compliance with an unconstitutional law. *Id.* at 875-76. The Court entered a permanent nationwide injunction preventing the Attorney General from attaching the three aforementioned conditions to the FY 2017 Byrne JAG funds. *Id.* at 881; Final Judgment and Order, *Chicago v. Sessions*, No. 17-cv-5720 (N.D. Ill.), Dkt. No. 211. However, as the Seventh Circuit had at the time stayed the nationwide scope of the preliminary injunction pending an *en banc* rehearing, this Court stayed the nationwide scope of the permanent injunction in the same fashion. *See City of Chicago*, 321 F. Supp. 3d at 881-82. However, the Seventh Circuit vacated the *en banc* hearing after this Court issued its permanent injunction, as by that point the preliminary injunction "ha[d] all but evaporated." *City of Chicago*, 2018 WL 4268814, at *2. Thus, the permanent injunction regarding the notice, access, and Section 1373 compliance conditions currently applies only to the FY 2017 funds and Chicago. *See* Final Judgment and Order. The Court's 2018 summary judgment opinion is on appeal before the Seventh Circuit. *See City of Chicago v. William Barr*, No. 18-2885 (7th Cir.).

The Attorney General began issuing FY 2018 Byrne JAG funds in October of 2018. (PSOF ¶ 34.) Chicago filed this suit on October 12, 2018, seeking to enjoin the Attorney General from again imposing certain immigration-related conditions on the FY 2018 funds. On November 20, 2018, DOJ notified Chicago that OJP had awarded the City $2,268,856 for its FY 2018 Byrne JAG award. (PSOF ¶ 35.) However, as before, to accept the money, Chicago had to agree to a variety of conditions. (*See* Chicago FY 2018 Byrne JAG Award, Ex. C to Def.'s Request for Judicial Notice ("RJN"), Dkt. No. 44-1.)

Several funding conditions are at issue in this case. Some this Court has already ruled upon, and others are new. The first four conditions, which have already been before this Court and therefore will be referred to as the "repeat conditions," are as follows:

1. **The notice condition**. This condition requires the State or local government to "provide—as early as practicable… —advance notice to the [Department of Homeland Security (DHS) ] of the scheduled release date and time for a particular alien, if a State or local government (or government-contracted) correctional facility receives from DHS a formal written request pursuant to the INA that seeks such advance notice." (Chicago FY 2018 Byrne JAG Award ¶ 46.)

2. **The access condition**. This condition requires the State or local government to permit federal government agents "access to any State or local government (or government-contracted) correctional facility by such agents for the purpose" of "interrogat[ing] any alien or person believed to be an alien as to his [or her] right to be or to remain in the United States." (*Id.* ¶ 45.)

3. **The Section 1373 compliance condition**. This condition requires the Chief Legal Officer of the recipient jurisdiction to certify that the "program or activity" funded under the Byrne JAG award complies with 8 U.S.C. §§ 1373 (a) and (b). (*Id.* ¶¶ 41-43.) 8 U.S.C. § 1373 provides: "Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373.

4. **The Section 1644 compliance condition**. This condition requires the Chief Legal Officer to certify that the "program or activity" funded under the Byrne JAG award complies with 8 U.S.C. § 1644. (Chicago FY 2018 Byrne JAG Award ¶¶ 41-43.) 8 U.S.C. § 1644 provides: "Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States." 8 U.S.C. § 1644.

**\*3** On November 2, 2018, DOJ announced that, "at this time" it would not "use or enforce" the repeat conditions against Chicago, because these conditions were the subject of pending litigation. (*See* FY 2017 and FY 2018 JAG Award Special Notices at 2, Ex. D to Def.'s RJN.) However, DOJ reserved the right to enforce the repeat conditions against Chicago in the future if "the posture of the pending litigation changes (or if the pending litigation is resolved) in a manner such that DOJ decides to use or enforce any or all of [the repeat conditions.]" (*Id.*)

There are also two new conditions attached to the FY 2018 grants that are at issue in this case:

1. **The harboring condition**. This condition prohibits the recipient jurisdiction from making any "public

disclosure… of any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection any fugitive from justice under 18 U.S.C. ch. 49, or any alien who has come to, entered, or remains in the United States in violation of 8 U.S.C. ch. 12—without regard to whether such disclosure would constitute (or could form a predicate for) a violation of 18 U.S.C. 1071 or 1072 or of 8 U.S.C. 1324(a)." (Chicago FY 2018 Byrne JAG Award.)

2. **The additional certification requirement**. This condition requires the recipient jurisdiction to submit a "Certifications and Assurances by the Chief Executive of the Applicant Government." (Chicago FY 2018 Byrne JAG Award ¶ 61.) The condition incorporates a requirement that the City's Chief Legal officer certify that "neither the jurisdiction nor any entity, agency, or official of the jurisdiction has in effect… any law, rule, policy, or practice that would apply to the 'program or activity' to be funded… that would or does— (a) impede the exercise by federal officers of authority under 8 U.S.C. § 1357(a); or (b) impede the exercise by federal officers of authority relating to 8 U.S.C. § 1226(a) or (c), 8 U.S.C. § 1231(a), or 8 U.S.C. § 1366(1) or (3)." (State or Local Government: FY 2018 Certification, Ex. M to Pl.'s RJN, Dkt. No. 52-13.)

The Court will refer to these two conditions as the "new conditions." As with the repeat conditions, DOJ announced that it would not enforce the additional certification requirement against Chicago. (*See* FY 2017 and FY 2018 JAG Award Special Notices at 2.) The Court will refer to all six funding conditions together as the "challenged conditions."

The present motions concern Chicago's Amended Complaint, which contains eight Counts. Count I charges that the challenged conditions are *ultra vires,* as the Attorney General does not have statutory authority to impose them. Count II alleges that the challenged conditions violate the separation of powers doctrine. Count III alleges that the challenged conditions violate the Spending Clause of the U.S. Constitution. Count IV alleges that 8 U.S.C. §§ 1373 and 1644 violate the Tenth Amendment's anticommandeering doctrine and thus the Attorney General cannot impose compliance with these laws as conditions on the Byrne JAG program. Count V asserts that, notwithstanding the unconstitutionality of §§ 1373 and 1644, Chicago's Welcoming City Ordinance and implementing policies comply with §§ 1373 and 1644, and the City deserves declaratory judgment to that effect. In Count VI, Chicago seeks a declaratory judgment that its Welcoming City Ordinance and implementing policies

comply with 8 U.S.C. § 1324. Count VII alleges that the challenged conditions are arbitrary and capricious in violation of the Administrative Procedure Act ("APA"). Finally, Count VIII asserts that the President lacked statutory authority under the DOJ's succession statute, 28 U.S.C. § 508, to appoint Matthew Whitaker as acting Attorney General. Chicago seeks a permanent injunction preventing the challenged conditions from taking effect. The City further reserves its right, upon final judgment of the Court and pursuant to 28 U.S.C. § 2412, to seek reasonable attorneys' fees, expenses, and costs.

**\*4** Chicago now moves for summary judgment in its favor on Counts I, II, III, IV, and VII, seeking a declaration that the challenged conditions violate the U.S. Constitution and the APA, and a permanent injunction that prohibits the DOJ from imposing the challenged conditions on the FY 2018 funds or in any future program year. The Attorney General moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss various aspects of the Amended Complaint. Specifically, the Attorney General argues that Chicago lacks standing to challenge the additional certification requirement, seek a declaration regarding its compliance with 8 U.S.C. § 1324, and challenge the President's appointment of former Acting Attorney General Whitaker; and Chicago fails to state a claim on its APA counts and its challenges to the harboring condition.

The Court will first address the standing and jurisdictional arguments for dismissal, and then turn to the merits of the Counts at issue in Plaintiff's Motion for Summary Judgment.

## II. MOTION TO DISMISS

The Attorney General moves to dismiss Counts I, II, III, VI, VII and VIII of Chicago's Amended Complaint under Rules 12(b)(1) and 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. *See* FED. R. CIV. PRO. 12(b)(1). Defendant asserts a facial challenge to Chicago's Amended Complaint. *See Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015) (noting that in evaluating a challenge to subject matter jurisdiction, a court must first determine whether a defendant has raised a factual or facial challenge). A facial challenge argues that the plaintiff has not sufficiently alleged a basis of subject matter jurisdiction. *Id.* In a facial challenge to subject matter jurisdiction, the court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d

440, 444 (7th Cir. 2009). The plaintiff bears the burden of establishing the elements necessary for jurisdiction. *See Silha*, 807 F.3d at 173.

Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." *See* FED. R. CIV. PRO. 12(b)(6). A court entertaining a Rule 12(b)(6) motion must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded facts alleged. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Id*.; *see also* FED. R. CIV. P. 8(a)(2).

### A. Whitaker Appointment (Count VIII)

The Court can dispense of the first issue quickly. In Count VIII, Plaintiff challenges the President's 2018 appointment of Matthew Whitaker as Acting Attorney General. In February 2019, the President appointed, and the Senate confirmed, William Barr to serve as Attorney General. Accordingly, in its response to Defendant's Motion to Dismiss, Plaintiff concedes that it is abandoning this claim. (*See* Pl.'s Memo. at 24, Dkt. No. 50 ("[T]he Court need not take up this weighty constitutional issue now.").) Thus, Defendant's Motion to Dismiss Count VIII with prejudice is granted.

### B. Welcoming City Ordinance
### Declaratory Judgment (Count VI)

The Court turns to the Attorney General's argument against Count VI, in which the City seeks a declaratory judgment that its Welcoming City Ordinance (the "Ordinance") and its implementing policies comply with 8 U.S.C. § 1324. Section 1324 contains the federal prohibition against harboring illegal aliens. *See* 8 U.S.C. § 1324(a) (establishing criminal liability for any person who "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place").

**\*5** This Ordinance, codified as Chapter 2-173 of the Chicago Municipal Code, reflects the City's determination that, "as a City in which one out of five of its residents is an immigrant,

'the cooperation of all persons, both documented citizens and those without documentation status, is essential to achieve the City's goals of protecting life and property, preventing crime and resolving problems.' " *City of Chicago*, 888 F.3d at 279 (citing Chicago, Ill. Muni. Code § 2-173-005). The Ordinance prohibits City agents from arresting, detaining, or continuing to detain a person based upon an immigration detainer when such detainer is for a civil immigration law violation, or on the belief that the person is not present legally in the U.S. or has committed a civil immigration violation. Chicago, Ill. Muni. Code § 2-173-042(a). So too are City agents prohibited from allowing Immigrations and Customs Enforcement (ICE) agents access to a person in City custody, allowing ICE agents use of City facilities for investigative purposes, expending their time on duty responding to ICE inquiries, and informing ICE of a person's custody status or release date. Chicago, Ill. Muni. Code § 2-173-042(b). The prohibitions in § 2-173-042 do not apply when the individual in question is a gang member, convicted felon, has a felony charge pending, or has an outstanding criminal warrant. *Id*. § 2-173-042(c). There is also an exception for when City agents act

pursuant to a "legitimate law enforcement purpose that is unrelated to the enforcement of a civil immigration law." *Id*. § 2-173-042(b).

In its Amended Complaint, Chicago alleges that high-ranking officials in President Trump's administration have threatened to "weaponize" 8 U.S.C. § 1324 against Chicago and other jurisdictions seeking to prioritize local law enforcement over enforcement of federal immigration law. Chicago cites to two such incidents: (1) a January 4, 2018, interview on Fox News in which then-Acting Director of ICE Thomas Homan states that he had asked DOJ to "look into criminal charges for elected officials with sanctuary policies, as they are harboring illegal aliens, according to 8 U.S.C. § 1324." (Am. Compl. ¶ 65, Dkt. No. 34.) And (2) a January 16, 2018, hearing before the Senate Judiciary Committee in which Kirstjen Nielsen, the then-Secretary of Homeland Security, stated during her testimony that "the Department of Justice is reviewing what avenues may be available" to charge elected officials in so-called sanctuary jurisdictions. (*Id*.) The City emphasizes that in the approximately 70 years of the law's existence, the federal government has never attempted to prosecute an elected official acting in his or her official capacity for a violation of Section 1324. This, despite the fact that Chicago has had a version of a policy of prohibiting City officials from assisting in federal immigration investigations since 1984. (Am. Compl. ¶ 24.) Chicago contends that these

comments from Trump Administration officials suggest that DOJ is considering criminally prosecuting elected officials in Chicago under Section 1324.

The Attorney General asserts that Chicago's request for a declaration that its Ordinance complies with Section 1324 is unripe because the City does not allege that the federal government has taken any effort to charge the City or its leaders with violating that statute. Nor does the City allege that federal government officials have suggested future Section 1324 prosecutions against *Chicago* officials specifically.

To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likelihood" that the injury "will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560-61 (1992)). The Attorney General's argument concerns the injury in fact requirement, ensures that a plaintiff has a "personal stake in the outcome of the controversy." *Id.* at 158, 157 n.5 (noting that standing and ripeness issues in a pre-enforcement challenge case "boil down to the same question"). An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations omitted). An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "substantial risk that the harm will occur." *Id.* (citation and internal quotations omitted).

 **6** Count VI raises a "pre-enforcement challenge." When a plaintiff claims that the threatened enforcement of a law creates an injury sufficient to create Article III standing, an actual arrest, prosecution, or other enforcement action is "not a prerequisite to challenging the law." *Susan B. Anthony*, 573 U.S. at 158-59. A court may undertake pre-enforcement when circumstances "render the threatened enforcement sufficiently imminent." *Id.* at 159. Specifically, a plaintiff satisfies the injury-in-fact requirement if he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* (citing *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Chicago has met the ripeness standard. The City has alleged an intention to engage in—or more accurately, declared that it is already engaging in—a course of conduct arguably

affected with a constitutional interest but proscribed by 8 U.S.C. § 1324. *See Driehaus*, 573 U.S. at 159. The Attorney General has not raised an argument as to why Chicago's constitutionally protected interests are not in play. Regardless, the City properly identifies two constitutional interests relevant to its desire to implement its Ordinance: (1) Chicago's First Amendment free speech rights, *see Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 833 (1995); and (2) the anticommandeering doctrine, which limits Congress's ability to issue orders directly to State and local governments, *see Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1475 (2018). Furthermore, Chicago alleged that the federal government made a credible threat of prosecution under Section 1324. *Driehaus*, 573 U.S. at 159; *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 625 n.1, (1986) ("[A] reasonable threat of prosecution creates a ripe controversy."). No less than the Acting Director of ICE and the Secretary of Homeland Security advised the public that DOJ was considering charging elected officials in "sanctuary cities" with violating Section 1324. The high-ranking nature of these individuals' roles in the executive branch renders their threats credible. The fact that these officials did not threaten Chicago or its elected officials by name does not doom the City's claim. The federal government has "not disavowed any intention of invoking the criminal penalty" behind Section 1324, leaving the City "some reason in fearing prosecution" for violation of that statute. *See Babbitt*, 442 U.S. at 302. Thus, Chicago's pre-enforcement challenge is ripe, and the Court denies Defendant's Motion to Dismiss Count VI.

However, the Court notes that while Chicago opposed the Motion to Dismiss Count VI, it did not move for summary judgment on this Count. Thus, Count VI remains in the case at this time.

### C. Standing to Challenge the Additional Certification Requirement

The Attorney General argues that the Court lacks subject matter jurisdiction over Chicago's challenges to the additional certification requirement (contained in Counts I, II, and III) because the City does not have Article III standing to pursue them. Specifically, the Attorney General argues that Chicago lacks an injury in fact sufficient to challenge the additional certification requirement because OJP has "publicly announced that it is not enforcing this requirement

as to Chicago and several other jurisdictions." (Def.'s Mot. at 22, Dkt. No. 44.) Further, the Attorney General asserts that if OJP were to decide to enforce the requirement, it would provide formal, written notice.

The City counters that DOJ's announcement was issued three weeks after the filing of Chicago's suit and, as a result, standing is not defeated. (Pl.'s Mot. at 20). The City is correct. Standing is measured at the commencement of an action. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). Chicago filed its Complaint on October 12, 2018, and DOJ issued its announcement on November 2, 2018. Because the City's injury is measured at the time the complaint is filed, Defendant's argument fails.

 **\*7** Instead, the question is one of mootness, and whether DOJ's withdrawal of the additional compliance requirement moots the City's complaint on this issue. Normally, under Article III, cases without "actual, ongoing controversies are moot and must be dismissed for lack of jurisdiction." *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003) (quoting *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990–91 (7th Cir. 2000)). One exception to this rule is when a defendant voluntary stops performing the challenged conduct after the commencement of a suit. *Friends of the Earth, Inc.*, 528 U.S. at 173. Ordinarily, the "voluntary cessation of the allegedly unlawful conduct" is insufficient to render a claim moot. *Id.* But for this exception, courts would be left "compelled to leave the defendant… free to return to his old ways." *Id.* at 189 (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 484 U.S. 283, 289 (1982) (internal quotations omitted)). Finally, "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* at 189.

The Attorney General does not specifically argue mootness, but cites *Whitmore v. Arkansas*, 495 U.S. 149, 157–58 (1990), for the proposition that for a court to have jurisdiction the injury alleged in the complaint must be "certainly impending." To support this, Defendant notes that DOJ would need to give Chicago "specific, formal, written notice of DOJ's intent" to re-start enforcement of the additional certification requirement and argues that such a development is "speculative" to begin with. (Def.'s Mot. at 22.) In *Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Supreme Court

held that a plaintiff lacked standing to seek an injunction against the enforcement of a police chokehold policy because he could not credibly allege that he faced a realistic threat from the policy. However, the Supreme Court explained that a citywide moratorium on police chokeholds would not moot "an otherwise valid claim for injunctive relief, because the moratorium by its terms was not permanent." *Friends of the Earth, Inc.*, 528 U.S. at 190 (citing *Lyons*, 461 U.S. at 101). Here, DOJ's notice is by its own terms impermanent. Indeed, DOJ has not offered any evidence about what "specific, formal, written notice" entails, and there is no reason to believe that if the litigation were terminated today the DOJ could not reimpose the conditions tomorrow. As a result, the Attorney General has not met his heavy burden of persuading the Court that his voluntary cessation moots this issue.

Accordingly, Defendant's Motion to Dismiss Plaintiff's challenge to the additional certification requirement on account of standing or mootness is denied.

### D. APA Claims (Counts I, II, III, and VII)

Next, the Attorney General moves to dismiss Counts I, II, III, and VII on the basis that they rely on the APA, but there is no final agency action for Chicago to challenge. As the Court explained in its summary judgment opinion, two things must be true for an agency action to be considered final. "First, the action must mark the 'consummation' of the agency's decision making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.' " *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Chicago asserts, as this Court has held previously, that the Attorney General's decision to impose the challenged conditions on the JAG funds constitutes final agency action that is ripe for judicial review. *See City of Chicago*, 321 F. Supp. 3d at 866.

According to the Attorney General, imposing the challenged conditions on the FY 2018 grants is not a final agency action because "OJP has issued the City's FY 2018 Byrne JAG award pursuant to court injunctions, [but] the Office has not yet determined to grant or deny the application administratively." (Def.'s Mot. at 19.) This contention is particularly unsuitable because the Attorney General made this precise argument in its briefing before the Court's last summary judgment decision, and the Court rejected it. *See City of Chicago v. Sessions*, No. 17-cv-5720 (N.D. Ill.), Def.'s

Memo., Dkt. 139 ("As there is no dispute that the Department has not yet determined whether to grant FY 2017 Byrne JAG funds to the City, or to deny its pending application, it follows that there is, as of yet, no final agency action for this Court to review."); *City of Chicago*, 321 F. Supp. 3d at 865-66. Although the Court has already ruled on these precise issues, nevertheless it will rule on them once again.

**\*8** First, as before, the decision to impose conditions on the JAG program is the "end result of [the] decision-making process on this score." *City of Chicago*, 321 F. Supp. 3d at 865. Accepting the grants requires compliance with the conditions, and as a result the "imposition of these Conditions by the Attorney General is far from 'tentative.' " *Id.* As a result, the first requirement for finality under the APA is satisfied. *See Bennett*, 520 U.S. at 177– 78.

Moreover, nothing has changed the Court's analysis with respect to the second condition. The conditions still "trigger important legal and practical consequences: They force Chicago to choose between accepting the award with the Conditions or forgoing the award in favor of maintaining the City's policy preferences." *City of Chicago*, 321 F. Supp. 3d at 866. *See also Abbs v. Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992) (finding agency action final where plaintiff faced "a dilemma: comply with a rule that harms [it] and that [it] believe[s] to be invalid or violate the rule at the risk of incurring a heavy penalty" (citation omitted)). Thus, the second requirement is met. Accordingly, the Court again finds that the decision to require compliance with the challenged conditions as a condition of accepting Byrne JAG funds constitutes final agency action that is ripe for judicial review.

The number of courts that have concluded the same has grown since this Court's last opinion on this subject. *See, e.g., City of Los Angeles v. Sessions*, 2018 WL 6071071 (C.D. Cal. 2018) (finding the Attorney General's imposition of the challenged conditions on Byrne JAG funds was final); *Oregon v. Trump*, 2019 WL 3716932 (D. Or. 2019) (same); *City and Cty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924 (N.D. Cal. 2018) (same); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 271, 281–84 (E.D. Pa. 2018) (same); *California ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1030-31 (N.D. Cal. 2018) (same).

### III. SUMMARY JUDGMENT

The Court turns to Chicago's Motion for Summary Judgment on Counts I, II, III, IV, and VII. Summary judgment is appropriate when the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56. A court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). In ruling on summary judgment, courts do not determine the truth of disputed matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will begin its summary judgment analysis with the four repeat conditions the City is challenging, before turning to the two new conditions in the FY 2018 grants.

#### A. Four Repeat Conditions

There four repeat conditions are virtually identical to conditions that this Court found unlawful in its summary judgment ruling on the FY 2017 grants. The similarities are evident:

**The FY 2018 notice condition**, like the FY 2017 notice condition, requires local governments to provide "advance notice to [federal immigration authorities] of the scheduled release date and time of a particular alien" when federal authorities request it. (*See* Chicago FY 2018 Byrne JAG Award.)

**The FY 2018 access condition**, like the FY 2017 access condition, requires local governments to permit federal immigration agents "access to any State or local government (or government-contracted) correctional facility… for the purpose [of] interrogat[ing] any alien or person believed to be an alien as to his right to be or remain in the United States." (*See id.*)

**\*9 The FY 2018 Section 1373 compliance condition**, like the FY 2017 Section 1373 compliance condition, requires that the recipient comply with 8 U.S.C. § 1373(a) and (b), and to execute a certification of "compliance" with those provisions. (*See id.*)

**The FY 2018 Section 1644 compliance condition** requires Chicago to certify compliance with 8 U.S.C. § 1644. This condition was not attached to the FY 2017 grants, but Section 1664 is materially identical to Section 1373(b). *Compare* 8 U.S.C. § 1644 *with* 8 U.S.C. § 1373(b); *see also City & Cty. of San Francisco v.*

*Sessions*, 372 F. Supp. 3d 928, 938 (N.D. Cal. 2019) (noting that "Section 1644 contains nearly identical language as Section 1373"). Defendant recognizes that analysis regarding the constitutionality of § 1373 "appl[ies] equally to Section 1644." (Def.'s Mot. at 2.) Accordingly, Defendant refers to these conditions jointly as the "Section 1373/1644 compliance conditions." (*Id.*)

Moreover, the Attorney General concedes that the four repeat conditions are "very similar" to the FY 2017 notice, access, and Section 1373 compliance conditions. (Def.'s Mot. at 2.) Thus, the Court concludes that the repeat conditions are materially identical to the conditions that this Court has already enjoined. *See City & Cty. of San Francisco*, 372 F. Supp. 3d at 941 (finding that the FY 2018 "notice, access, and Section 1373/1644 certification conditions remain essentially the same" as their FY 2017 counterparts and holding that those repeat conditions are unlawful).

The Court has already ruled that each of the repeat conditions is unlawful. In its summary judgment opinion on the FY 2017 grants, this Court found that the Attorney General lacked statutory authority to impose the notice and access conditions, and consequently DOJ's efforts to impose them violated the separation of powers doctrine and were *ultra vires*. *See City of Chicago*, 321 F. Supp. 3d at 874. That decision was bolstered by the Seventh Circuit's holding, in the context of upholding the preliminary injunction, that this Court "did not err in determining that the City established a likelihood of success on the merits of its contention that the Attorney General lacked the authority to impose the notice and access conditions on receipt of the Byrne JAG grants." *City of Chicago*, 888 F.3d at 287. It has been further bolstered by the Third Circuit's recent holding that Congress did not empower the Attorney General to enact the notice and access provisions. *See City of Philadelphia v. Attorney Gen. of United States*, 916 F.3d 276, 291 (3d Cir. 2019). Finally, in its 2018 summary judgment ruling, this Court also found that 8 U.S.C. § 1373 is unconstitutional under the anticommandeering doctrine, and accordingly, the § 1373 compliance condition is *ultra vires* as the Authority General lacks authority to demand compliance with an unconstitutional statute. *See City of Chicago*, 321 F. Supp. 3d at 872, 875-76.

The Attorney General does not defend on the merits its decision to re-impose conditions in the FY 2018 grants that this Court found to be unlawful and enjoined. Instead, the Attorney General merely states that he "respectfully disagrees

with those rulings," and "incorporate[s]...the arguments made previously" in the FY 2017 case. (Def.'s Mot. at 10.) The Attorney General is presumably preserving his arguments on the repeat conditions as he awaits the Seventh Circuit's decision in the appeal of this Court's summary judgment opinion. *See Chicago v. Barr*, 18-2885 (7th Cir.).

**\*10** Because the Attorney General agreed that the four repeat conditions are essentially identical as the condition this Court declared unlawful and declined to present any new legal arguments to defend the four repeat conditions, the Court finds that Chicago is entitled to summary judgment on these conditions. As this Court already articulated, the notice and access conditions are *ultra vires*, and § 1373 is unconstitutional, rendering the § 1373 compliance condition *ultra vires*. *See City of Chicago*, 321 F. Supp. 3d at 876. The Court grants summary judgment in Plaintiff's favor on Counts I and II with respect to the repeat conditions.

Additionally, the Court grants summary judgment in Chicago's favor on Count IV, in which the City seeks a declaration that 8 U.S.C. § 1644 violates the Tenth Amendment's anticommandeering doctrine and thus the Attorney General cannot impose the Section 1644 compliance condition as a condition of accepting Byrne JAG funds. The Attorney General concedes that 8 U.S.C. §§ 1373 and 1644 contain essentially identical language, and that therefore analysis regarding the constitutionality of § 1373 "appl[ies] equally to Section 1644." (Def.'s Mot. at 2.) As such, the Court's ruling that § 1373 violates the anticommandeering doctrine applies equally to § 1644. *See City of Chicago*, 321 F. Supp. 3d at 875-76. 8 U.S.C. § 1644 violates the Tenth Amendment's anticommandeering doctrine and therefore compliance with § 1644 cannot be imposed as a condition of accepting Byrne JAG funds.

### B. Two New Conditions

### 1. Additional certification requirement

Chicago moves for summary judgment on its claim, contained in Count I, that the additional certification requirement is *ultra vires*. This condition requires the would-be grantee to certify that it is not subject to or bound by any "law, rule, policy, or practice" that would "impede the exercise by federal officers of authority" under 8 U.S.C. §§ 1357(a), 1226(a) or (c), 1231(a), or 1366(1) or (3). (State or Local Government: FY 2018 Certification.) The City argues that the Attorney

General lacks authority to impose the additional certification requirement as a condition for receiving grant funding.

It is well established that the "power of the purse does not belong to the Executive Branch." *City of Chicago v. Sessions*, 888 F.3d 272, 283 (7th Cir. 2018). The Executive possesses "no inherent authority as to the grant at issue here to condition the payment of such federal funds on adherence to its political priorities." *Id.* Spending is instead the domain of Congress. *See* U.S. Const. Art. I § 8. If the Executive has spending power, it is because Congress delegated that authority. Therefore, whether the additional certification requirement is proper depends on whether Congress delegated authority to the Attorney General through statute to impose it. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001); *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297 (2013) ("[F]or agencies charged with administering congressional statutes … the power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly… what they do is ultra vires."). Accordingly, the Court must look to federal statute to determine the Attorney General's authority to impose the additional certification requirement.

Statutory interpretation begins with the plain language of the statute. *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). A court must "assume that the legislative purpose [of the statute] is expressed by the ordinary meaning of the words used." *Id.* (citations omitted). Absent clearly expressed Congressional intent to the contrary, the plain language should be conclusive. *Id.* The language and design of the statute as a whole may also provide guidance in determining the plain meaning of its provisions. *Id.*

**\*11** In this round of briefing, DOJ presented no arguments regarding the source of its statutory authority to impose the additional certification requirement, and for that reason seems to have conceded the point. *See Bloch v. Frischholz*, 587 F.3d 771, 784 (7th Cir. 2009) (arguments not developed during summary judgment are waived). Regardless, because of the importance of the constitutional principles at issue in this case, the Court will perform the relevant analysis to determine whether there is indeed a statutory basis for the Attorney General's authority to impose the additional certification requirement.

The Byrne JAG statute itself, codified at 34 U.S.C. §§ 10151–10158, does not grant the Attorney General authority to impose the additional certification requirement. The Seventh Circuit has held that the Byrne JAG statute does not grant the Attorney General "the authority to impose conditions that require states or local governments to assist in immigration enforcement, nor to deny funds to states or local governments for the failure to comply with those conditions." *City of Chicago*, 888 F.3d at 284. Indeed, the Attorney General's ability to depart from the funding distribution formula mandated by 34 U.S.C. § 10156 is "strictly circumscribed." *City of Chicago*, 888 F.3d at 286. Thus, the Byrne JAG statute cannot be the source of authority. The City has identified two potential statutory sources of authority based on the Attorney General's briefing in earlier iterations of this case, and the Court will consider those sources in turn.

In the FY 2017 Byrne JAG case, the Attorney General argued that his authority to impose conditions on the Byrne JAG funds came from 34 U.S.C. § 10102(a)(6). 34 U.S.C. § 10102(a) sets forth the specific, delegated, and general powers of the Assistant Attorney General ("AAG") for the Office of Justice Programs, including the authority to place "special conditions on all grants." 34 U.S.C. § 10102(a). As the Court will detail in the next section, this is not a valid source of statutory authority to impose the additional certification requirement.

The other potential source of statutory authority is 34 U.S.C. § 10153(A)(5)(D), a section of the Byrne JAG statute that allows the Attorney General to require grant recipients certify compliance with "all other applicable Federal laws." This Court has interpreted this statute to mean what it "literally says." *City of Chicago*, 321 F. Supp. 3d at 875 (citing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008)). It declined to adopt Chicago's narrow reading of the statute, which would limit the reach of "all other applicable Federal laws" to mean federal laws "applicable to federal grantees generally." *Id.* Instead, the Court adopted Defendant's plain-meaning interpretation of the statute and meant that "applicable Federal laws" meant "any federal law that applies to Chicago." *Id.*; *see also City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 945 (N.D. Ill. 2017) ("Congress could expect an entity receiving federal funds to certify its compliance with federal law… the entity is—independent of receiving federal funds—obligated to comply.").

Chicago argues that it is not obliged to comply with the statutes listed in the additional certification requirement (let alone be prohibited from having any laws or policies that "impede" enforcement of these statutes) because these statutes do not apply to cities and localities but instead are

applicable only to the federal government. This argument is well taken. The statutes enumerated in the additional certification requirement—8 U.S.C. §§ 1226(a) and (c), 1231(a), 1357(a), and 1366(1) and (3)—deal with the federal government's authority and obligation to arrest and detain criminal aliens, remove criminal aliens, interrogate aliens and perform other investigatory actions without a warrant, and submit reports to Congressional committees, respectively. None of these statutes require cities or localities to do anything—they apply only to the federal government and as a result, the Attorney General cannot require Chicago to "comply" with them. It is Congress' job to attach such conditions to the receipt of federal grants, and the Executive cannot unilaterally attach conditions to the receipt of grant funding without express authorization from Congress. *City of Chicago*, 888 F.3d at 286. This power has not been delegated, and thus the additional certification requirement is *ultra vires*. The Court grants Chicago's Motion for Summary Judgment as to the additional certification requirement.

**2. Harboring condition**

*12 The Attorney General asserts that Chicago's challenges to the harboring condition (contained in Counts I, II, III, and VII) should be dismissed for failure to state a claim, while the City moves for summary judgment on those same counts. The harboring condition prohibits grant recipients from making any "public disclosure… of any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection any fugitive from justice under 18 U.S.C. ch. 49, or any alien who has come to, entered, or remains in the United States in violation of 8 U.S.C. ch. 12—without regard to whether such disclosure would constitute (or could form a predicate for) a violation of 18 U.S.C. 1071 or 1072 or of 8 U.S.C. § 1324(a)." (Chicago FY 2018 Byrne JAG Award.) Chicago contends that Congress did not authorize the Attorney General to impose the harboring condition, rendering it *ultra vires* and a violation of the separation of powers. The Attorney General contends that his authority to impose the harboring condition is found in 34 U.S.C. § 10102(a).

First, the Attorney General asserts that 34 U.S.C. §§ 10102(a)(2) and (a)(4) provide authority to impose the harboring condition. These sections require the AAG to "maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice," and "maintain liaison with public and private educational and research institutions, State and local governments, and governments of other nations relating to criminal justice. 34 U.S.C. §§ 10102(a)(2), (a)(4). Citing to Merriam-Webster's Dictionary, Defendant notes that "liaison" is defined as "a close bond or connection" or "a person who establishes and maintains communication for mutual understanding and cooperation." From this definition, the Attorney General concludes that Congress charged the AAG with facilitating cooperation between federal and state criminal justice authorities—thus conferring a grant of authority that "encompasses… protecting the confidentiality of federal law enforcement information provided to state and local agencies." (Def.'s Mot. at 12.)

The plain language of §§ 10102(a)(2) and (a)(4) simply does not support the Attorney General's interpretation. The relevant language requires the AAG to "maintain liaison with… State governments in matters relating to criminal justice." 34 U.S.C. § 10102(a)(2). Nothing in this language indicates a delegation of authority to place the harboring condition on Byrne JAG grantees. Sections 10102(a)(2) and (a)(4) are more plausibly read as an instruction for the AAG to maintain bilateral communications or act as a point of contact with state and local governments. *See City & Cty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 944 (N.D. Cal. 2019). Here, the Court agrees with the Northern District of California's analysis of this same argument—that court concluded that DOJ put "far more weight on 'maintain liaison' than it can hold." *See id.* at 943-45 (holding that the AAG's duty to "maintain liaison" in criminal justice matters does not confer authority for DOJ to impose the harboring condition). The duty to "maintain liaison… in matters relating to criminal justice" does not venture into the authority to impose funding conditions related to immigration enforcement. And the harboring condition goes far beyond the authority that the Attorney General claims to have derived from §§ 10102(a)(2) and (a)(4)—to protect the confidentiality of federal law enforcement information provided to state and local agencies. It prohibits disclosure of federal law enforcement information related to "a direct or indirect attempt" to harbor not just "fugitives of justice" but also "any alien." The language seeks "the broadest coverage possible" by its use of the term "indirect attempt," which "has no boundary" and would presumably up for interpretation by the AAG. *City & Cty. of San Francisco*, 372 F. Supp. 3d at 945. Such sweeping authority is hardly implicit in the AAG's responsibility to communicate with and disseminate criminal justice information to various state and local entities.

THE CITY OF CHICAGO, Plaintiff, v. WILLIAM P. BARR, in his..., Slip Copy (2019)

**\*13** Moreover, as the Seventh Circuit has noted, Sections 10102(a)(1)-(5) "address the communication and coordination duties of the Assistant Attorney General." *City of Chicago*, 888 F.3d at 285. The Third Circuit joined in that assessment. *See City of Philadelphia v. Attorney Gen. of United States*, 916 F.3d 276, 288 (3d Cir. 2019) (Finding that 34 U.S.C. §§ 10102(a)(1)-(5) "all deal with the AAG's power to disseminate criminal justice information and coordinate with various agencies and officials" and noting "the ministerial nature of the powers in" §§ 10102(a)(1)-(5).). Especially given the "strictly circumscribed" nature of the Byrne JAG program—the Byrne JAG statute "precisely describes the formula through which funds should be distributed to states and local governments, and imposes precise limits on the extent to which the Attorney General can deviate from that distribution"—it would be "inconceivable" that Congress would have anticipated that the AAG could abrogate that distribution scheme and deny funds to localities based on a new condition related to harboring aliens. *See City of Chicago*, 888 F.3d at 286. After all, Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *City of Chicago*, 888 F.3d at 287 (citing *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006)). Thus, the structure and design of the statute as a whole does not support the contention that "maintain liaison" provides authority for the Attorney General to impose the harboring condition. Accordingly, this argument fails.

Second, the Attorney General contends that § 10102(a)(6) supplies him with the requisite authority to impose the harboring condition. Section 10102(a)(6) states that the AAG shall "exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, *including placing special conditions on all grants, and determining priority purposes for formula grants.*" 34 U.S.C. § 10102(a)(6) (emphasis added). The italicized language, Defendant contends, confers the requisite authority.

The Seventh Circuit and this Court have already considered and rejected this argument. As Defendant well knows, in holding that Chicago had established a likelihood of success on the merits of its contention that the Attorney General lacked the authority to impose the FY 2017 notice and access conditions, the Seventh Circuit characterized Section 10102(a)(6) as follows:

[Section] 10102(a)(6) is a catch-all provision, simply recognizing that the Assistant Attorney General can also exercise such other powers and functions as may be vested through other sources—either in that Chapter or by delegation from the Attorney General. … A clause in a catch-all provision at the end of a list of explicit powers would be an odd place indeed to put a sweeping power to impose any conditions on any grants—a power much more significant than all of the duties and powers that precede it in the listing, and a power granted to the Assistant Attorney General that was not granted to the Attorney General. … [T]he Attorney General's argument is that the "including" clause itself is a stand-alone grant of authority to the Assistant Attorney General to attach any conditions to any grants in that subchapter or other subchapters even though that authority is not otherwise provided in the chapter and is not possessed by the Attorney General. Because that interpretation is so obviously belied by the plain meaning of the word "including," the Attorney General's position is untenable.

*City of Chicago*, 888 F.3d at 285. The Attorney General does not explain why the Seventh Circuit's analysis of § 10102(a)(6) in the context of the notice and access conditions should not equally apply to the harboring condition. Defendant is not free to disregard the Seventh Circuit's rulings in its briefings before this Court. The Seventh Circuit has already held that the statutory text of § 10102, and the structure of relevant statutes, supports the conclusion that § 10102(a)(6) does not give the AG broad authority to impose even reasonable conditions on Byrne JAG grants. *See City of Chicago*, 888 F.3d at 287. Accordingly, the harboring condition exceeds DOJ's statutory authority, and the Court grants summary judgment in Chicago's favor on Counts I and II.

**\*14** The City proposes additional arguments as to why the harboring condition violates the Spending Clause and is arbitrary and capricious under the APA. However, as the Court found before, granting summary judgment on Counts I, II, and IV affects the balance of Chicago's claims. *City of Chicago,* 321 F. Supp. 3d at 876. The Court need not delve into the arguments regarding the Spending Clause or whether this condition is arbitrary and capricious, as it has already held that Plaintiff is entitled to summary judgment on the basis of the harboring clause being *ultra vires.* Thus, Counts III and VII are dismissed as moot. Count V, in which Chicago requests a declaration that the City complies with 8 U.S.C. § 1644, is also moot because the Court has declared § 1644 unconstitutional. *Id.* at 876.

## IV. **INJUNCTION**

With the merits decided, the Court turns to Chicago's request for a permanent injunction. As a reminder, in 2018 this Court issued a permanent national injunction prohibiting Defendant from imposing the notice, access, and Section 1373 compliance conditions on the FY 2017 Byrne JAG funds. (Final Judgment and Order, *Chicago v. Sessions,* No. 17-cv-5720 (N.D. Ill.), Dkt. No. 212.) However, at the time the Court issued the permanent injunction, the Seventh Circuit had stayed the nationwide scope of the preliminary injunction entered in this case pending an *en banc* rehearing. Accordingly, the Court stayed the nationwide scope of that injunction. Thus, the permanent injunction regarding the notice, access, and Section 1373 compliance conditions currently applies only to the FY 2017 funds and Chicago.

The City now seeks a permanent injunction that prohibits the Attorney General from imposing the challenged conditions— the four repeat conditions as well as the harboring condition and additional certification requirement—in all future years of the Byrne JAG program. Chicago seeks a "program-wide" injunction—that is, one that is nationwide in scope. The Court will first consider whether the City is entitled to a permanent injunction and then turn to the scope of said injunction.

### A. Permanent Injunction

The Court may issue permanent injunctive relief if the moving party demonstrates:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006).

The Attorney General does not engage with these four requirements in his briefing. Instead, he only argues that any injunction the Court issues should be limited to Chicago—or, if the Court issues a national injunction, its application beyond Chicago should be stayed pending the Seventh Circuit's decision in *Chicago v. Barr.* Thus, it appears to the Court that the Attorney General does not object to a permanent injunction of the challenged conditions. Regardless, Chicago carries the burden to demonstrate that it is entitled to a permanent injunction, so the Court will proceed with its analysis without any specific objections from the Attorney General.

As for the first and second requirements, Chicago has demonstrated that it has suffered an irreparable injury for which no available remedies at law can compensate. The City has again

submitted an affidavit from Chicago Police Department ("CPD") Lieutenant Kevin Hannigan, who explains that if the City complies with the challenged conditions, undocumented immigrants will be less likely to interact and cooperate voluntarily with local police, believing that such contacts could put them or their families at risk of deportation. (*See* Hannigan Decl., Dkt. No. 54.) Lieutenant Hannigan, who has served in the CPD for thirty years, explains that trust between CPD and immigrant communities would be "badly damaged" if CPD was seen as "proactive enforcers of federal civil immigration rules, or volunteering to help ICE prosecute civil immigration enforcement actions against non-violent, law-abiding citizens." (*Id.* ¶ 6.) As this Court has found before, this loss of trust is an irreparable harm for which no adequate

remedy at law. *See City of Chicago*, 321 F. Supp. 3d at 877–78 (citing *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) (finding that loss of goodwill can qualify as an irreparable harm for which there is no adequate remedy at law)). Money damages cannot remedy a loss of trust. *See City of Chicago*, 888 F.3d at 291 ("Such trust, once destroyed by the mandated cooperation and communication with the federal immigration authorities, would not easily be restored."). Moreover, a constitutional injury alone can constitute irreparable harm. *See City of Chicago*, 321 F. Supp. 3d at 878 (citing 11A

Wright & Miller, Federal Practice & Procedure § 2948.1 (2d ed.

**\*15** 1995)) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.")). Chicago faces such an injury here, as the Attorney General subjects the City's receipt of Byrne JAG funding on unconstitutionally imposed conditions. Accordingly, Chicago has demonstrated the first two required elements for a permanent injunction.

Third, the balance of hardships weighs in the City's favor. As the Seventh Circuit explained, the harm the Attorney General suffers from an injunction is minimized because "the Attorney General can distribute the funds without mandating the conditions— as has been done for over a decade— and nothing in the injunction prevents any state or local government from coordinating its local law enforcement with the federal authorities." *City of Chicago*, 888 F.3d at 291. Importantly, the Court has found the challenged conditions to be unlawful, and the Attorney General cannot plausibly argue that being prevented from imposing unlawful conditions would present a hardship. As this Court has already explained, the injunction "does not strip away any option [the Attorney General] could [lawfully] exercise." *City of Chicago*, 321 F. Supp. 3d at 878–79. On the other hand, the impact on Chicago if forced to comply with the conditions would be "devastating." *City of Chicago*, 888 F.3d at 291. Either Chicago would have to accept the funds with the unlawful conditions attached, damaging its relationship with its immigrant communities and its crime fighting capabilities, or Chicago would have to decline the funds entirely. The City intends to use the FY 2018 Byrne JAG funds to increase its Bureau of Detectives's capacity to clear violent cases and bring shooters to justice. (*See* Am. Compl. ¶ 40.) Without the FY 2018 Byrne JAG funds, Chicago will not be able to carry out that initiative as planned. Thus, the continued application of the challenged conditions would cause Chicago hardship by

unlawfully blocking it from funds it could otherwise accept —as it has since 2005—without grievance.

Fourth and finally, the public interest is served by a permanent injunction in this case. As before, the Court has found that the Attorney General failed to administer the Byrne JAG program in conformance with the limited statutory authority Congress affords him. As the Seventh Circuit recently reminded in this case, the judiciary must act as a check on usurpation of power by the Executive Branch, and "jealously guard" the separation of powers. *City of Chicago*, 888 F.3d at 277. Enjoining the unlawful conditions and checking the Executive's encroachment of congressional power undoubtedly serves the public interest. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest.").

Thus, Chicago has demonstrated all four requirements for permanent injunctive relief. Accordingly, the Court finds that permanent injunctive relief is warranted as to DOJ's imposition of the challenged conditions.

### B. Scope of Injunction

The Court turns to its assessment of the appropriate scope of the injunction. As the Third Circuit recently observed in a parallel case, "[w]hile there are tried and true standards for determining *when* equitable relief is warranted, there is less authority regarding the *scope* of equitable relief." *City of Philadelphia v. Attorney Gen. of United States*, 916 F.3d 276, 291– 92 (3d Cir. 2019). This is because "when district courts are properly acting as courts of equity, they have discretion unless a statute clearly provides otherwise." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 496 (2001). The scope of injunctive relief is dictated by the extent of the violation established. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Injunctive relief should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Id*. When a court believes the underlying right to be highly significant, "it may write injunctive relief as broad as the right itself." *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 879 (7th Cir. 2011) (citing 1 Dan B. Dobbs, *Law of Remedies* § 2.4(6), p. 113 (2d ed. 1993)).

**\*16** The Court's last injunction was limited to the FY 2017 Byrne JAG program in the hope that DOJ would not re-impose its unlawful conditions. It did. To this end, Chicago

petitions the Court to enjoin the imposition of the challenged conditions not just in the FY 2018 Byrne JAG funds, but in *all* future years of the Byrne JAG program. The Attorney General offers no opinion on the subject.

Given the extent of the violation established, and DOJ's track record in this litigation, an injunction that covers all future years of the Byrne JAG program is appropriate. The nature of injury here—a violation of the separation of powers doctrine—is highly significant. *See City of Chicago v. Sessions, 888 F.3d 272, 277 (7th Cir. 2018)* ("The founders of our country well understood that the concentration of power threatens individual liberty and established a bulwark against such tyranny by creating a separation of powers among the branches of government. If the Executive Branch can determine policy, and then use the power of the purse to mandate compliance with that policy by the state and local governments, all without the authorization or even acquiescence of elected legislators, that check against tyranny is forsaken."). Unless the Seventh Circuit overturns this Court's summary judgment opinion, it will never be permissible for the Attorney General to impose the challenged conditions on Chicago. And importantly in this equitable consideration, the Attorney General has shown a willingness to impose unlawful conditions in the next round of Byrne JAG program administration, despite an injunction prohibiting those same conditions in the previous year. This action has imposed a serious cost on the City, as it had to initiate new litigation after the Attorney General again imposed the four repeat conditions on the FY 2018 grants. Indeed, DOJ recently released the Byrne JAG Solicitation for FY 2019, which again contains several of the challenged conditions. (*See* Byrne JAG Grant FY 2019 Local Solicitation, Ex. 1 to Pl.'s Mot. to Cite Supp. Authority, Dkt. No. 75-1.) Thus, it is apparent to the Court that entering an injunction regarding all future JAG funds is the only way to prevent Chicago from being forced to litigate the Byrne JAG funding conditions every year. Enjoining the unlawful conditions for all future program years is an appropriate remedy based on the violation established.

Next, the Court must determine the only aspect of the injunction that the Attorney General actually contests: whether the injunction should be limited to Chicago and its sub-grantees, or nationwide in scope. The scope of the FY 2017 permanent injunction—national but stayed as to its application outside of Chicago—is currently on appeal before the Seventh Circuit. Yet district court proceedings do not freeze while an appeal is pending. *See City of Chicago, 321*

*F. Supp. 3d at 879; City & Cty. of San Francisco v. Sessions, 372 F. Supp. 3d at 954* (issuing a permanent injunction as to FY 2018 Byrne JAG conditions while the court's decision on 2017 Byrne JAG conditions was still on appeal). And there have been no changes in facts or law since the FY 2017 preliminary and permanent injunction rulings that would shift this Court's understanding of the propriety of a nationwide injunction in this case. Unless the Seventh Circuit reverses, this Court will not depart from its earlier analysis, which will preserve the status quo and the integrity of the pending appeal.

**\*17** Accordingly, the Court will again issue a permanent nationwide injunction as to all six challenged conditions. However, in deference to the Seventh Circuit's pending decision on the issue of nationwide injunctions in this case, the Court will again stay the nationwide scope of the permanent injunction. Stays are "necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits. The goal is to minimize the costs of error." *In re A & F Enters., Inc. II, 742 F.3d 763, 766 (7th Cir. 2014); see also City & Cty. of San Francisco, 372 F. Supp. 3d at 954* (granting injunction in favor of plaintiffs but staying its nationwide scope while the FY 2017 permanent injunction is pending before the Ninth Circuit).

## V. CONCLUSION

For the reasons stated herein, the Attorney General's Motion to Dismiss (Dkt. No. 42) is granted in part and denied in part and Chicago's Motion for Summary Judgment (Dkt. No. 48) is granted in part and denied in part. The Court grants Chicago's Motion for Summary Judgment on Counts I, II, and IV. The Court grants the Attorney General's Motion to Dismiss Count VIII with prejudice. Counts III, V, and VII are dismissed as moot. Count VI remains pending in this case. Chicago shall advise the Court of how it intends to proceed with Count VI at the next status hearing in this case.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge

United States District Court

Dated: 9/19/2019

THE CITY OF CHICAGO, Plaintiff, v. WILLIAM P. BARR, in his..., Slip Copy (2019)

**All Citations**

Slip Copy, 2019 WL 4511546

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 4694734
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

CITY OF EVANSTON and THE UNITED
STATES CONFERENCE OF MAYORS, Plaintiffs,
v.
WILLIAM P. BARR, in his official capacity as
Attorney General of the United States, Defendant.

Case No. 18 C 4853
|
09/26/2019

Harry D. Leinenweber, Judge, United States District Court

### MEMORANDUM OPINION AND ORDER

**\*1** This litigation concerns the U.S. Attorney General's ability to attach conditions to funds that Congress charged his office with distributing to State and local governments. Plaintiffs, the City of Evanston and the U.S. Conference of Mayors (the "Conference"), bring suit against the Attorney General for alleged violations of the U.S. Constitution and the Administrative Procedures Act. Plaintiffs now seek summary judgment in their favor. The Attorney General, in turn, contends that the Court should dismiss Plaintiffs' Amended Complaint, or in the alternative, grant summary judgment in his favor. For the reasons stated herein, Defendant's Motion to Dismiss (Dkt. No. 77) is denied and Plaintiffs' Motion for Summary Judgment (Dkt. No. 52) is granted in part and denied in part.

### I. BACKGROUND

In addition to describing the most relevant facts here, the Court incorporates those facts previously described in its earlier ruling. (*See* Aug. 9, 2018, Order, Dkt. No. 23.) The Conference is a non-profit and non-partisan association that exists to address the intersection of federal and local policy on behalf of cities with populations of 30,000 or more. (Def.'s Resp. to Pls.' Stmt. of Facts ("PSOF") ¶¶ 1, 8-10, Dkt. No. 80.) The Conference's members are cities, which are represented in the Conference by their mayors. (*Id.* ¶ 8.) Evanston is a municipal corporation and home

rule unit of government in Illinois and is a member of the Conference. (*Id.* ¶ 2.) The Conference has resolved to oppose the Attorney General's decision to attach certain immigration-related conditions to Byrne JAG funds. (*Id.* ¶ 8.)

The Byrne JAG program is the primary source of federal criminal justice funding to States and units of local government. (PSOF ¶ 18.) The Office of Justice Programs (OJP) within the Department of Justice (DOJ) oversees the Byrne JAG program. (*Id.*) Byrne JAG grants are administered according to a statutory formula based on share of violent crime, population, and other factors. *See* 34 U.S.C. § 10156. Conference members have applied for and received Byrne JAG funds since 2006. (PSOF ¶ 24.) In FY 2017, approximately 350 Conference members were directly allocated around $50 million in Byrne JAG funds. (*Id.* ¶ 26.)

Cities can also receive Byrne JAG funds indirectly through their State or a nearby local government. DOJ does not make direct grants to cities that, under the Byrne JAG formula, would receive less than a certain minimum—$10,000 in FY 2017 and FY 2018. (*Id.* ¶ 20.) Cities that are allocated less than $10,000 receive their Byrne JAG funds through an application submitted by the State or nearby local government. (PSOF ¶ 21.) Additionally, the Byrne JAG statute requires cities that bear a higher cost of preventing and investigating violent crimes than their neighboring community to submit a joint application for the aggregate JAG funds allocated both to itself and its neighbor. *See* 34 U.S.C. § 10156(d)(4). For this reason, Evanston receives its Byrne JAG funds through the application submitted by the City of Chicago. (PSOF ¶ 21.) To draw down its JAG funds, Evanston must supply all information or certifications, and agree to any conditions, that DOJ requires of all grant recipients. (*Id.* ¶ 21.) Evanston was allocated $12,654 in FY 2017 Byrne JAG funds, and $10,919 in FY 2018. (*Id.* ¶¶ 26, 29.)

**\*2** Plaintiffs filed this suit in July of 2018, seeking an injunction to keep the Attorney General from enforcing certain "notice, access, and Section 1373 compliance conditions" in the FY 2017 Byrne JAG grants. On August 9, 2018, after issuing a ruling on the merits of those conditions in a parallel case, *City of Chicago v. Sessions*, No. 17-cv-5720 (N.D. Ill.), the Court issued a preliminary injunction in this case. (*See* Aug. 9, 2018, Order.) At that time, the Attorney General had imposed a fast-approaching deadline by which Conference members had to agree to those three unlawful conditions or forgo their FY 2017 awards. Accordingly, the Court issued the preliminary injunction to cover both

Evanston and those Conference members facing an "accept or decline" deadline. (*See* Aug. 9, 2018, Order at 11.) However, because the nationwide scope of the injunction in the *City of Chicago* case was (and remains) on appeal before the Seventh Circuit, the Court stayed the injunction as to the Conference members. Soon after, the Seventh Circuit lifted that stay, holding that this case is "fundamentally different" than the situation in *City of Chicago* because the injunction in this case is "limited to parties actually before the court who have demonstrated a right to relief." (*See Evanston and U.S. Conference of Mayors v. Sessions*, No. 18-2734 (7th Cir.), Aug. 29, 2018, Order, Dkt. No. 33.) Thus, since the Seventh Circuit's Order, the preliminary injunction has prohibited the Attorney General from imposing the notice, access, and Section 1373 compliance conditions on receipt of the FY 2017 Byrne JAG funds for Evanston or any Conference members that faced an accept or decline deadline.

DOJ began distributing FY 2018 Byrne JAG awards in October of 2018. (PSOF ¶ 45.) In December of 2018, Plaintiffs filed their Amended Complaint, asserting that the Attorney General had again attached the unlawful notice, access, and Section 1373 compliance conditions (the "repeat conditions") to the FY 2018 JAG funds. Plaintiffs also alleged that the Attorney General imposed new unconstitutional conditions on the FY 2018 grants, namely:

1. **The Section 1644 compliance condition.** This condition requires the applicant's Chief Legal Officer to certify that the "program or activity" funded under the Byrne JAG award complies with 8 U.S.C. § 1644. (Byrne JAG Program FY 2018 Local Solicitation at 27, Ex. H to Pl.'s Request for Judicial Notice (RJN), Dkt. No. 62-2.) 8 U.S.C. § 1644 provides: "Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States." 8 U.S.C. § 1644.

2. **The harboring condition.** This condition prohibits the recipient jurisdiction from making any public disclosure "of any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection any fugitive from justice under 18 U.S.C. ch. 49, or any alien who has come to, entered, or remains in the United States in violation of 8 U.S.C. ch. 12." (*See* Albuquerque FY 2018 Byrne JAG Award ¶ 44, Ex. S to Pl.'s RJN, Dkt. No. 62-3.)

3. **The additional certification requirement.** This condition requires the applicant's Chief Executive to submit a "Certifications and Assurances by the Chief Executive of the Applicant Government." (Certifications and Assurances by the Chief Executive of the Applicant Government, Ex. K to Pl.'s RJN, Dkt. No. 63-2.) The condition incorporates a requirement that the applicant's Chief Legal officer certify that the applicant government has no "law, rule, policy, or practice that would apply to the 'program or activity' to be funded" that would "(a) impede the exercise by federal officers of authority under 8 U.S.C. § 1357(a); or (b) impede the exercise by federal officers of authority relating to 8 U.S.C. § 1226(a) or (c), 8 U.S.C. § 1231(a), or 8 U.S.C. § 1366(1) or (3)." (State or Local Government: FY 2018 Certification, Ex. L to Pl.'s RJN, Dkt. No. 62-3.)

4. **The questionnaire condition.** This condition requires each applicant to answer the following questions:

(1) Does your jurisdiction have any laws, policies, or practices related to whether, when, or how employees may communicate with [the Department of Homeland Security (DHS) ] or [Immigrations and Customs Enforcement (ICE) ]?

(2) Is your jurisdiction subject to any laws from a superior political entity (e.g., a state law that binds a city) that meet the description in question 1?

**\*3** (3) If yes to either: Please provide a copy of each law or policy; Please describe each practice; Please explain how the law, policy, or practice complies with Section 1373.

(Byrne JAG Program FY 2018 Local Solicitation at 27-28, Ex. H to Pl.'s RJN.)

This Court recently issued a summary judgment opinion in which it held the Section 1644 compliance condition, harboring condition, and the additional certification requirement, as well as the repeat conditions, unlawful. *See City of Chicago v. Barr*, No. 18 C 6859, 2019 WL 4511546 (N.D. Ill. Sept. 19, 2019). The Court has not yet ruled on the legality of the questionnaire condition. The Court will refer to the seven conditions Plaintiffs seek to enjoin in this suit collectively as the "challenged conditions."

The Amended Complaint contains five counts. Counts I and II allege that the challenged conditions are *ultra vires* and violate the separation of powers, because absent a

statutory provision or express delegation, only Congress is entitled to attach conditions to federal funds. Count III asserts that the challenged conditions violate the Spending Clause of the U.S. Constitution. Count IV alleges that the challenged conditions violate the Tenth Amendment's anti-commandeering doctrine. Count V charges that the challenged conditions are arbitrary and capricious in violation of the Administrative Procedure Act.

The Attorney General now moves to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, to grant summary judgment in his favor on all counts of the Amended Complaint. Plaintiffs move for summary judgment in their favor on Counts I, II, and IV, and seek a permanent injunction prohibiting the Attorney General from imposing the challenged conditions on the receipt of Byrne JAG funds. Plaintiffs concede that if the Court grants summary judgment in their favor on Counts I, II, and IV, then Counts III and V should be dismissed as moot. Plaintiffs further reserve their right, upon final judgment of the Court and pursuant to 28 U.S.C. § 2412, to seek reasonable attorneys' fees, expenses, and costs.

The Court will first address the jurisdictional arguments for dismissal, and then turn to the merits of the Counts at issue in Plaintiffs' Motion for Summary Judgment.

## II. LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(1) tests the jurisdictional sufficiency of a complaint. See FED. R. CIV. P. 12(b)(1). The Attorney General asserts a facial challenge, as he argues that the Plaintiffs have not sufficiently alleged a basis of subject matter jurisdiction. See *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). In a facial challenge to subject matter jurisdiction, a court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). Plaintiffs bear the burden of establishing the elements necessary for jurisdiction. See *Silha*, 807 F.3d at 173.

Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." See FED. R. CIV. P. 12(b)(6). A court entertaining a Rule 12(b)(6) motion must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded facts alleged. *Tamayo v.*

*Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Id.*; see also FED. R. CIV. P. 8(a)(2).

**\*4** Summary judgment is appropriate when the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See FED. R. CIV. P. 56. A court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). In ruling on summary judgment, courts do not determine the truth of disputed matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. DISCUSSION

### A. Evanston's Standing

The Attorney General argues that dismissal under Rule 12(b)(1) is necessary because Evanston lacks standing and the Conference lacks associational standing. To establish Article III standing, an individual plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likelihood" that the injury "will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

According to the Attorney General, Evanston cannot satisfy the injury in fact requirement because Evanston is a subgrantee of Chicago, and therefore is subject to the challenged conditions only to the extent that those conditions apply to Chicago itself. And Chicago is currently protected by an injunction in the *Chicago v. Barr* case from almost all of the conditions that Evanston challenges here. However, the Court has already considered and rejected this argument. (*See* Aug. 9, 2018, Order at 3-4.) The Attorney General does not dispute that subgrantees such as Evanston must supply any information and certifications, and agree to any conditions, that DOJ requires of all direct grant recipients.

(PSOF ¶ 21.) Thus, as this Court has already held, an injunction that prohibits DOJ from enforcing the challenged conditions against Chicago "does not insulate Evanston" from the requirement to comply with those conditions. (Aug. 9, 2018, Order at 4.) Accordingly, Evanston faces a concrete and particularized injury that is clearly traceable to the Attorney General's actions and is likely to be redressed by a favorable decision in this case.

As a final argument on Evanston's standing, the Attorney General asserts that Evanston lacks standing to challenge the additional certification requirement because OJP has publicly announced that it is currently not enforcing this requirement against Chicago and its sub-recipients. This argument fails for the same reason the Court explained in its recent *City of Chicago* opinion. *See City of Chicago v. Barr*, No. 18 C 6859, 2019 WL 4511546, at *7 (N.D. Ill. 2019) (the Attorney General's voluntary cessation of imposing certain grant conditions does not defeat standing or moot plaintiff's complaint). Thus, Evanston has standing to challenge the Byrne JAG conditions. The Court turns to the Conference's standing.

### B. The Conference's Standing

The Attorney General additionally moves to dismiss the Conference from this action for lack of associational standing. This Court has already twice held that the Conference has associational standing to litigate this issue on behalf of its members. *See* Aug. 9, 2018, Order at 5-7; *City of Chicago v. Sessions*, No. 17 C 5720, 2017 WL 5499167, at *5 (N.D. Ill. 2017). In his Motion to Dismiss, the Attorney General "renews" his challenge to the Conference's associational standing and refers the Court to his brief in opposition to the preliminary injunction. (Def.'s Mot. at 10, 26, Dkt. No. 78.) Other than asserting he is "renewing" his objection to the Conference's standing and referring the Court to an argument it has already considered and rejected, the Attorney General offers no explanation for why the Court should change its decision on standing.

**\*5** Regardless, the Court will briefly note again why the Conference has associational standing. Associational standing requires that: (1) the Conference's members would otherwise have standing to sue in their own right; (2) the interests that the Conference seeks to protect are germane to its organizational purpose; and (3) neither the claim asserted, nor the relief requested requires the participation of individual

Conference members in the lawsuit. *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011). The first requirement is met when even one member of the association shows that it would have standing to bring suit on its own behalf. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977). Thus, Evanston's standing alone would suffice to confer associational standing on the Conference. However, approximately 350 Conference members were directly allocated Byrne JAG funds in FY 2018, to say nothing of the potential number of Conference members who receive funds as subgrantees. (Joint Stip. ¶ 6, Dkt. No. 74-1.) Those 350 cities all have standing as they all face the injury of being obliged to comply with unlawful conditions; thus, the first requirement is clearly met. (*See* Aug. 9, 2018, Order at 5.) The second requirement is met because the purpose of the Conference is to coordinate cities' interaction with the federal government, and this lawsuit seeks to prevent overreach by the Executive Branch and preserve local decision-making authority. (*See id.* at 6.) And the third requirement is satisfied because this suit raises a "pure question of law"—whether the Attorney General exceeded his statutory authority when imposing the challenged conditions on Byrne JAG funds—that is not contingent on evidence from any specific city.

*See Int'l Union, United Auto.,
Aerospace & Agr. Implement Workers*

of *Am. v. Brock*, 477 U.S. 274, 287-88 (1986). Therefore, as this Court has held twice before, the Conference has associational standing.

### C. First Six Challenged Conditions

Plaintiffs are entitled to summary judgment on Counts I and II with respect to the notice, access, Section 1373 compliance, Section 1644 compliance, and harboring conditions, as well as the additional certification requirement. *See City of Chicago v. Barr*, No. 18 C 6859, 2019 WL 4511546, at *10-14 (N.D. Ill. 2019) (holding those conditions *ultra vires*).

Plaintiffs additionally move for summary judgment on Count IV. This Count alleges a violation of the Tenth Amendment's anticommandeering doctrine, which limits Congress's ability to issue orders directly to State and local governments. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1475 (2018). In their motion for summary judgment, Plaintiffs explain that they seek a declaration that 8 U.S.C. §§ 1373 and 1644 violate the anticommandeering doctrine,

and therefore the Attorney General cannot impose compliance with these laws as a condition of accepting Byrne JAG funding. Plaintiffs are entitled to this relief. *See City of Chicago,* 2019 WL 4511546, at *10 ("[T]he Court's ruling that § 1373 violates the anticommandeering doctrine applies equally to § 1644....[T]herefore compliance with § 1644 cannot be imposed as a condition of accepting Byrne JAG funds.")

However, the Court notes that the Amended Complaint includes, within Count IV, a request for a declaratory judgment that all challenged conditions violate the Tenth Amendment's anticommandeering principle. (*See* Am. Compl. ¶¶ 150, 157, Dkt. No. 46.) Plaintiffs presented arguments as to why all challenged conditions are *ultra vires* but did not argue that the challenged conditions *themselves* impermissibly commandeer state and local governments. Nor could they. *See City of Chicago v. Sessions,* 321 F. Supp. 3d 855, 867 (N.D. Ill. 2018) ("No Tenth Amendment problem exists when a federal agency imposes grant conditions, because the Spending Clause empowers the federal government to offer funds in exchange for state action it could not otherwise demand.") (citations omitted). Thus, to the extent Plaintiffs seek a declaration that the challenged conditions violate the anticommandeering doctrine, that is denied.

Because the Court granted summary judgment in Plaintiffs' favor on Counts I, II, and IV, Counts III and V need not be resolved and are dismissed as moot. *See City of Chicago,* 2019 WL 4511546, at *14.

### D. Questionnaire Condition

The parties cross-move for summary judgment on Counts I and II as to the questionnaire condition. The questionnaire condition requires a Byrne JAG applicant to describe any of its laws, policies, or practices that relate to communication with DHS and ICE and to provide an explanation of how those laws, policies, or practices comply with 8 U.S.C. § 1373. (Byrne JAG Program FY 2018 Local Solicitation at 27-28.) Plaintiffs argue that the Attorney General lacks statutory authority to impose this condition.

**\*6** The Executive Branch has "no inherent authority to place conditions on the receipt of federal funds—any such authority must be given to the executive by the legislature." *City of Chicago v. Sessions,* 888 F.3d 272, 295 (7th Cir.

2018) (citing *La. Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. 355, 374 (1986)), *reh'g en banc granted in part, opinion vacated in part,* No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018), *vacated,* No. 17-2991, 2018 WL 4268814 (7th Cir. Aug. 10, 2018). This is because the power of the purse belongs to Congress, not the Executive. *See City of Chicago,* 888 F.3d at 283. Because the Attorney General's authority to attach conditions to Byrne JAG grants and to depart from the funding distribution formula mandated by 34 U.S.C. § 10156 is "strictly circumscribed," *id.* at 286, whether the questionnaire condition is *ultra vires* depends on whether Congress has delegated to the Attorney General, by statute, the authority to impose such a condition. Thus, the Court faces a question of statutory interpretation.

Statutory interpretation begins with the plain language of the statute. *United States v. Berkos,* 543 F.3d 392, 396 (7th Cir. 2008). A court must "assume that the legislative purpose [of the statute] is expressed by the ordinary meaning of the words used." *Id.* (citations omitted). Absent clearly expressed Congressional intent to the contrary, the plain language should be conclusive. *Id.* The language and design of the statute as a whole may also provide guidance in determining the plain meaning of its provisions. *Id.*

The Attorney General identifies several statutory provisions that he claims give him the authority to impose the questionnaire condition. He first points to 34 U.S.C. § 10102, which sets forth the specific, delegated, and general powers of the Assistant Attorney General (AAG) for the Office of Justice Programs. The Attorney General contends that § 10102(a)(6) authorizes the questionnaire condition. This section authorizes the AAG to "exercise such other powers and functions as may be vested in the [AAG] pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants." *See* 34 U.S.C. § 10102(a)(6). However, the Seventh Circuit has roundly rejected this provision as an independent source of authority for the Attorney General to create grant conditions, and the Court need not address it again. *See City of Chicago,* 888 F.3d at 285 ("[T]he Attorney General's argument… that the 'including' clause itself is a stand-alone grant of authority to the [AAG] to attach any conditions to any grants in that subchapter… is untenable.") This argument fails.

The Attorney General next points to §§ 10102(a)(2) and (a)(4), which require the AAG to "maintain liaison with the executive and judicial branches of the Federal and

State governments in matters relating to criminal justice," and "maintain liaison with public and private educational and research institutions, State and local governments, and governments of other nations relating to criminal justice." 34 U.S.C. §§ 10102(a)(2), (a)(4). This Court recently rejected the argument

that the "maintain liaison" language confers authority on the Attorney General to impose immigration enforcement-related conditions on Byrne JAG funds. *See City of Chicago*, 2019 WL 4511546, at *12. The Court sees no reason to depart from that conclusion here. Sections 10102(a)(2) and (a)(4) are more plausibly read as an instruction for the AAG to maintain bilateral communications or act as a point of contact with state and local governments. *See id.* (citing *City & Cty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 944 (N.D. Cal. 2019)). The AAG's duty to "maintain liaison… in matters relating to criminal justice" does not provide the Attorney General authority to require would-be Byrne JAG grantees to detail their laws, policies, and practices that relate to how their employees communicate with DHS or ICE, nor how each complies with Section 1373. Accordingly, this argument fails.

 *7 The Attorney General also contends that the Byrne JAG statute itself authorizes the imposition of the questionnaire condition, citing 34 U.S.C. § 10153(a). Section 10153(a) reads, in relevant part, "the chief executive officer of a State or unit of local government shall submit an application to the Attorney General… *in such form as the Attorney General may require*." 34 U.S.C. § 10153(a) (emphasis added). Defendant contends that the italicized language authorizes the Attorney General to "require applicants to include certain information about any laws or policies regarding communication with federal immigration authorities." (Def.'s Mot. at 14.) According to the Attorney General, the authority to dictate the "form" of a Byrne JAG application includes the authority to require applicants to provide additional information in the application.

However, the plain language of § 10153(a) does not support this reading. Discussing the "form" language in § 10153(a) in the context of the Section 1373 compliance condition, the Southern District of New York noted that "the Attorney General's authority to determine the 'form' of the application does not include the ability to dictate the 'substance' of which laws an applicant must comply with as a condition of grant funding." *States of New York v. Dep't of Justice*, 343 F. Supp. 3d 213, 230 (S.D.N.Y. 2018). That court explained that the definition of "form"—"the outer shape, structure, or configuration of something, *as distinguished*

*from its substance or matter*"—indicates that § 10153(a) does not authorize the Attorney General to impose substantive conditions on Byrne JAG funds. *Id.* (citing Black's Law Dictionary (10th ed. 2014) (emphasis added)). Similarly, the Attorney General's authority to determine the "form" of the application does not constitute a grant of authority to require any additional information his office wishes.

Moreover, this section differentiates between "form" and "application" in such a way that indicates the Attorney General's ability to determine "form" does not grant him authority to alter the substance of an application. "Form" is used twice in § 10153: once in § 10153(a) ("the chief executive officer of a State or unit of local government shall submit an application to the Attorney General… in such form as the Attorney General may require") and again in § 10153(a)(5):

> Such application shall include the following… A certification, made *in a form acceptable to the Attorney General*… that (a) the programs to be funded by the grant meet all the requirements of this part; (b) all the information contained in the application is correct; (c) there has been appropriate coordination with affected agencies; and (d) the application will comply with all provisions of this part and all other applicable Federal laws.

34 U.S.C. § 10153(a)(5) (emphasis added). Section 10153(a)(5) allows the Attorney General to determine the "form" of the certification while mandating precisely what substance the certification must include. This indicates that in § 10153(a) Congress intended "form" to mean the configuration or structure of the application, just as in § 10153(a)(5) it intended "form" to mean the structure of a strictly circumscribed set of requirements.

This interpretation is consistent with the Seventh Circuit's characterization of § 10153(a) as "explicit authority to… determine the form of the application and the certification." *City of Chicago*, 888 F.3d at 283; *see also States of New York*, 343 F. Supp. 3d at 229 ("§ 10153… sets forth largely technical and ministerial application requirements pertaining

to the grant itself."). Importantly, the Seventh Circuit held that none of the provisions in the Byrne JAG statute, including § 10153(a), "grant the Attorney General the authority to impose conditions that require states or local governments to assist in immigration enforcement, nor to deny funds to states or local governments for the failure to comply with those conditions." *City of Chicago*, 888 F.3d at 284. The Attorney General himself describes the questionnaire condition as "requiring modest cooperation with federal law enforcement responsibilities in the immigration system." (Def.'s Mot. at 7.) Thus, the Attorney General apparently concedes that the questionnaire condition imposes exactly the type of burden on State and local governments that the Seventh Circuit has held the Byrne JAG statute does not authorize.

**\*8** Furthermore, if the Attorney General's ability to dictate "form" worked the way he argues it does, the effect would be to give his office authority carte blanche to require applicants to divulge whatever information the Attorney General wishes to extract. Because Congress does not hide elephants in mouseholes, *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006), such a broad grant of discretion would be far more explicit. Accordingly, Section 10153(a) does not authorize the Attorney General to impose the questionnaire condition.

Indeed, there is only one part of 34 U.S.C. § 10153 that appears to give the Attorney General any authority to determine the substance of the application: § 10153(a)(4). This part states that the Byrne JAG application shall include:

> An assurance that, for each fiscal year covered by an application, the applicant shall maintain and report such data, records, and information (programmatic and financial) *as the Attorney General may reasonably require.*

34 U.S.C. § 10153(a)(4) (emphasis added). However, as Plaintiffs have correctly noted, the questionnaire condition is not authorized under § 10153(a)(4) because the condition does not concern "programmatic" or "financial" data, records, or information. The meaning of "financial" is self-evident and clearly does not apply to the information at issue in the questionnaire condition. The Court interprets "programmatic" to mean information related to the program to be funded by the JAG grant. That is how this term is used elsewhere within § 10153 and in other sections of the Byrne JAG statute. *See* 34 U.S.C. § 10153(a)(5)(A) (authorizing the Attorney General to require the applicant to certify that "the programs to be funded by the grant meet all the requirements of this part"); 34 U.S.C. § 10152 (authorizing the Attorney General to make grants for criminal justice "programs"). An applicant's descriptions of its laws, policies, and practice that relate to whether, when, and how its employees may communicate with DHS or ICE, and how its policies comply with Section 1373, do not constitute programmatic information. One other court has already so ruled. *See City of Los Angeles v. Sessions*, No. CV 18-7347, 2019 WL 1957966, at \*5 (C.D. Cal. 2019) (holding that § 10153(a)(4) does not authorize the questionnaire condition because "Congress has limited the information that the Attorney General could require of States and local governments to programmatic and financial information"). Thus, § 10153(a)(4) does not authorize the Attorney General to impose the questionnaire condition.

Finally, the Attorney General argues that his office has historically imposed a large number of special conditions on Byrne JAG funds, most of which are not expressly authorized by statute. (Def.'s Mot. at 6-7; Def.'s Reply at 3-4, Dkt. No. 87.) Accordingly, the Attorney General concludes that Plaintiffs' argument "proves too much," as under Plaintiffs' analysis, it would seem that many of the past and current Byrne JAG funding conditions would be invalid as *ultra vires*. This argument does the Attorney General no favors. Apart from suggesting that perhaps the Attorney General has imposed many conditions on Byrne JAG funds that are not statutorily authorized—the validity of which are not before the Court in this suit—this argument does not identify any source of statutory authority for the questionnaire condition.

For the foregoing reasons, the Attorney General lacks statutory authority to impose the questionnaire condition, and it is *ultra vires*. Plaintiffs' Motion for Summary Judgment on Counts I and II is granted as to the questionnaire condition.

### E. Injunction

**\*9** With the merits decided, the Court turns to Plaintiffs' request for a permanent injunction in this case. Plaintiffs currently have a preliminary injunction that prohibits the Attorney General from imposing the notice, access, and Section 1373 compliance conditions on receipt of the FY 2017 Byrne JAG funds for Evanston or any Conference

members that faced an accept or decline deadline in 2018. (*See* Aug. 9, 2018, Order at 11; Aug. 29, 2018 Order (7th Cir.).) Plaintiffs now seek a permanent injunction that prohibits the Attorney General from imposing any of the challenged conditions in all future years of the Byrne JAG program. Plaintiffs seek a "program-wide" injunction —that is, one that is nationwide in scope. The Court will first consider whether Plaintiffs are entitled to a permanent injunction and then assess the injunction's proper scope.

### 1. Permanent Injunction

The Court may issue permanent injunctive relief if the moving party demonstrates:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The Attorney General does not engage with these four requirements in its briefing. Instead, he argues that any injunction in this case should be limited to Evanston. Thus, it appears to the Court that the Attorney General does not object in principle to a permanent injunction of the challenged conditions. Regardless, Plaintiffs carry the burden to demonstrate that they are entitled to such an injunction, so the Court will proceed with its analysis without any input from the Attorney General.

Regarding the first and second factors, Plaintiffs have suffered irreparable injuries from the Attorney General violating the separation of powers doctrine, and the resultant law enforcement budget uncertainty among all Conference members who receive Byrne JAG funds. As this Court has noted before, a constitutional injury alone can constitute irreparable harm. *See City of Chicago*, 321 F. Supp. 3d at 878 (citing 11A Wright & Miller, Federal Practice & Procedure § 2948.1 (2d ed. 1995)). Evanston and other Conference

members face such an injury here, as the Attorney General subjects their receipt of Byrne JAG funds on unconstitutional conditions. Additionally, the choice that Evanston and other Conference members face—suffer the constitutional injury or decline Byrne JAG funds entirely—is itself sufficient to establish irreparable harm. *See* Aug. 9, 2019, Order at 8; *City of Chicago*, 321 F. Supp. 3d at 878 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)); *Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 538 (N.D. Cal.), *appeal dismissed as moot sub nom. City & Cty. of San Francisco v. Trump*, No. 17-16886, 2018 WL 1401847 (9th Cir. 2018). Money damages cannot adequately compensate for the constitutional injuries that Plaintiffs face. Accordingly, Plaintiffs have demonstrated the first two required elements for a permanent injunction.

Third, considering the balance of hardships between Plaintiffs and the Attorney General, a remedy in equity is warranted. Evanston and other Conference members would suffer significant hardship if they had to either accept unlawful conditions or forgo the Byrne JAG funds. In contrast, as this Court has already found, the Attorney General would suffer "little hardship" if he were forbidden from imposing unlawful conditions while otherwise being able to distribute Byrne JAG funds as usual. *See City of Chicago*, 2019 WL 4511546, at *15; *City of Chicago*, 321 F. Supp. 3d at 878.

And fourth, the public interest is served by a permanent injunction in this case, for the same reason the Court recently articulated in the *Chicago v. Barr* case. It is clearly in the public's interest to enjoin the imposition of conditions that violate the separation of powers doctrine. *See City of Chicago*, 2019 WL 4511546, at *15. Thus, Plaintiffs have satisfied all four requirements for permanent injunctive relief as to DOJ's imposition of the challenged conditions.

### 2. Scope of Injunction

*10 The Court turns to its assessment of the appropriate scope of the injunction. When "district courts are properly acting as courts of equity, they have discretion unless a statute clearly provides otherwise." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 496 (2001). The scope of injunctive relief is dictated by the extent of the violation established. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Injunctive relief should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Id.* When a court believes the underlying right to

be highly significant, "it may write injunctive relief as broad as the right itself." *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 879 (7th Cir. 2011).

The preliminary injunction in this case prohibits the Attorney General from imposing the notice, access, and Section 1373 compliance conditions on any Conference members who faced the "accept or decline" deadlines for the FY 2017 grants. Plaintiffs now seek an injunction that covers all future Byrne JAG program years. The Court finds, for the same reasons it recently articulated when granting an injunction for all future program years in the *City of Chicago* case, that this relief is warranted. *See City of Chicago*, 2019 WL 4511546, at *16 (an injunction covering all future Byrne JAG program years is the appropriate remedy given the nature of the legal violation and DOJ's history of repeatedly imposing conditions this Court has held to be unlawful).

Additionally, Plaintiffs seek "program-wide" relief, that is, a nation-wide injunction that prohibits the Attorney General from imposing the challenged conditions on any Byrne JAG recipient. However, such an injunction would be a significant expansion of the preliminary injunction in this case, which covered only Conference members who faced accept or decline deadlines. Given that the validity of a national injunction in this context is currently on appeal before the Seventh Circuit, *see City of Chicago v. William Barr*, No. 18-2885 (7th Cir.), the Court declines to issue such an injunction in this case now.

In the absence of a nationwide injunction, Plaintiffs request an injunction that covers all impacted Conference members. This approach is appropriate as it is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano*, 442 U.S. at 702. Furthermore, as the Seventh Circuit has noted, such an injunction is tailored to "the parties actually before the court who have demonstrated a right to the relief." (*See* Aug. 29, 2018, Order.)

The Attorney General argues that the Court should limit injunctive relief to only those Conference members that, before summary judgment, affirmatively requested relief from the challenged conditions, demonstrated their authorization to seek such relief, and agreed to be bound by the results of this litigation. Citing the fact that the Conference has a diverse membership, which includes cities that want to be bound by the challenged conditions, Defendant contends that the scope of the injunction should be limited to those members who do not want to be bound by the challenged

conditions. The Attorney General does not cite any cases in which a court held that an association had standing to pursue relief for its members but limited the scope of an injunction to individual association members who came forward with individualized proof that they were authorized to, and wished to, obtain the requested relief. This argument fails because an association that establishes standing and prevails is entitled to obtain relief for all of its impacted members. *See Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011). This is the reason that the third requirement for associational standing is that "neither the claim asserted, nor the relief requested requires the participation of individual association members in the lawsuit." *Id.* (citing *Hunt*, 432 U.S. at 343). Put simply, the Court has already determined in its associational standing analysis that the nature of the relief requested in this case does not require the participation of individual members in the lawsuit. The Court is not inclined to reverse course now that it is in the equitable remedy phase and require the participation of individual members.

**\*11** This holding is in line with the doctrine of associational standing, which recognizes that:

> [T]he primary reason people join an organization… is often to create an effective vehicle for vindicating interests that they share with others. The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all.

*Brock*, 477 U.S. at 290 (internal quotations and citation omitted).

Moreover, the fact that some Conference members may support the policies embodied by the challenged conditions does not mean it would be inequitable to include those members within the scope of the injunction. These cities still suffer an affront to their sovereignty when the Attorney General is permitted to direct their behavior in an unauthorized way. (*See* Aug. 9, 2018, Order at 9.) This injury is not "peculiar to the individual member concerned"

and the fact and extent of the injury do not "require individualized proof." *Brock*, 477 U.S. at 287 (discussing, in the associational standing context, the requirement that neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit). Indeed, Conference members that want to implement their own, pro-immigration enforcement policies are seeking to exercise the local sovereignty that the Tenth Amendment and this permanent injunction are designed to protect. (*See* Aug. 9, 2018, Order at 9.) Additionally, the Court notes that although the Attorney General does not have the authority to force Conference members to cooperate with federal immigration enforcement efforts as a condition to receiving Byrne JAG funds, "that does not mean that such cooperation is not allowed." *City of Chicago*, 888 F.3d at 296 n.3 (Manion, J., concurring in part and dissenting in part). This eliminates any concerns the Court may have had about extending the

permanent injunction to include all Conference members, including those who do not want the relief at hand.

Finally, the Attorney General asserts that the Court must limit the injunction to those Conference members that agree to be bound by it, because certain Conference members are suing him separately over the challenged conditions. The Attorney General is concerned that those members who are maintaining their own lawsuits should not be able to obtain one judgment in this case and a different judgment in their individual case. The Court has already considered this argument and rejected it. *See City of Chicago*, 2017 WL 5499167, at *5 (citing *Chicago-Midwest Meat Ass'n v. City of Evanston*, 589 F.2d 278, 281 n.3 (7th Cir. 1978); *Hunt,* 432 U.S. at 343). If the Court had reached an adverse judgment for Plaintiffs in this case, *stare decisis* would protect the Attorney General against further litigation. *Id.*

Therefore, the Court grants a permanent injunction against the imposition of the challenged conditions upon Evanston and any Conference member that has been allocated, applied for, or has been awarded Byrne JAG funds in FY 2017, FY 2018, and in all future grant years.

## IV. CONCLUSION

**\*12** For the reasons stated herein, the Attorney General's Motion to Dismiss (Dkt. No. 77) is denied. Plaintiffs' Motion for Summary Judgment (Dkt. No. 52) is granted in part and denied in part as follows: the Court grants summary judgment for the Plaintiffs on Counts I and II with respect to all challenged conditions, and on Count IV insofar as Plaintiffs are entitled to a declaration that Sections 1373 and 1644 violate the anticommandeering doctrine and the Attorney General cannot require compliance with these statutes as a condition of Byrne JAG funds. The Court dismisses Counts III and V as moot.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge

United States District Court

Dated: 9/26/2019

**All Citations**

Slip Copy, 2019 WL 4694734

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.